310 S.E.2d 193

**Beatrize GRIJALVA**

v.

**Galo E. GRIJALVA.**

No. 15845.

Supreme Court of Appeals of West Virginia.

Dec. 13, 1983.

Jack W. DeBolt, Charleston, for appellant.

William E. Murray, McKittrick & Vaughan, St. Albans, for appellee.

NEELY, Justice:

Dr. Galo E. Grijalva and his wife Beatrize were divorced by a Kanawha County Circuit Court decree on 15 September 1981. The terms of their divorce were controlled by an earlier separation agreement that was adopted by the circuit court in its final order. That agreement which was both skillfully drafted and comprehensive in its provisions is set forth in its entirety in the Appendix to this opinion. Under that agreement Dr. Grijalva was required to pay his wife $500 a month in child support until the youngest child attained the age of eighteen, unless Mrs. Grijalva remarried, in which case the child support was to be increased to $1,000 per month. Furthermore, Dr. Grijalva agreed to transfer to his wife his 1979 Oldsmobile automobile, to purchase for her a new car of similar quality every five years, and to provide her with a major oil company credit card with which to pay for gas, oil, maintenance, repairs and upkeep on the car.

On 6 January 1982 Mrs. Grijalva petitioned the circuit court for a decretal judgment against Dr. Grijalva for money owed to her under the settlement agreement and

subsequent court decree. Dr. Grijalva replied to that petition and filed a counter-petition asking for a modification of both his alimony and child support obligations. After a hearing, the circuit court ordered that Dr. Grijalva no longer be required to provide new vehicles and the major oil company credit card, and that child support be reduced from $500 to $400 per month. Mrs. Grijalva then appealed to this Court on the grounds that the contractual agreement between the parties precluded subsequent court modification of the divorce decree under *In Re Estate of Hereford,* 162 W.Va. 477, 250 S.E.2d 45 (1978). We agree with Mrs. Grijalva's position and reverse.

I

The law that controls this case is found in Syllabus Point 4 of *In Re Estate of Hereford, supra,* which provides as follows:

In all domestic relations cases where the final order is entered after 1 February 1979, if at the time of entry of the final order, the court finds the terms of a property settlement agreement fair and reasonable, such property settlement agreement may specifically provide that periodic payments (alimony) shall never be changed by the circuit court; that the remedy for failure to make such periodic payments shall be by contract action and not by contempt; that the periodic payments shall be enforceable by contempt if the payor is able to pay, but that the court shall not have power to increase or decrease the award; that *no periodic payments shall ever be paid,* but that a lump sum settlement in lieu of such payments shall constitute a final settlement of the rights of the parties; or, any other terms acceptable to the court to which the parties may agree. However, in order to have a periodic payment treated as anything but alimony or alimony and child support, the parties must express themselves in clear, unambiguous language in the property settlement agreement and the agreement must be confirmed by the court in some obvious way.

The property settlement agreement entered into by Dr. and Mrs. Grijalva made very specific provisions concerning every matter relevant to their divorce. The parties agreed concerning the effect of the contract in the section called "General Provisions" which provides in pertinent part:

a. If either party shall hereafter obtain a decree of divorce against the other, this agreement and the provisions hereof shall, by reference or otherwise, be incorporated in and become part of said decree, and the party obtaining such decree of divorce shall not incorporate, attempt to incorporate or cause to be incorporated any provision in such decree contrary to, or at variance with, the terms of this agreement, nor will either party attempt to enforce any decree or judgment which is contrary to, or at variance with, the provisions hereof.

b. This agreement shall be binding and obligatory upon the parties, notwithstanding any judgment recovered by either of them against the other in any action for divorce or any decree made therein in the State of West Virginia or elsewhere, and each and every paragraph and provision hereof shall survive any such judgment or decree, notwithstanding that such judgment or decree may incorporate only a portion or part of this agreement and notwithstanding that the parties may subsequently in any such action enter into a stipulation embodying or incorporating only a part or portion of this agreement.

Dr. Grijalva was not treated gently by the separation agreement. Nonetheless, the provisions of the agreement could not be more clear and it is a contract to which he assented freely and voluntarily.[1] The

---

**1.** Another clause of the Separation Agreement's "General Provisions" section speaks directly to this point:

Both the legal and practical effect of this agreement, in each and every respect, and the financial status of the parties, have been fully explained to both parties, and they both acknowledge that it is a fair agreement and is not the result of any fraud, duress or undue influence exercised by either party upon the other or by any other person or persons upon either, and they further agree that this agree-

record discloses that between the time of the divorce decree and the proceedings that gave rise to this appeal Dr. Grijalva's income declined substantially. The trial court, relying upon our language in *Hereford, supra,* 162 W.Va. at 489, 250 S.E.2d at 52, that "[c]hild support, of course, is always subject to continuing judicial modification," held that both the provisions concerning the automobile and the $500 per month child support were within the continuing jurisdiction of the court.

■ After reading the settlement agreement in its entirety we find absolutely no basis for the trial court's conclusion that the provisions concerning the automobile were child support. The obligation to provide a new automobile every five years and a major oil company credit card was in no way linked to the presence or absence of minor children and a plain reading of the document demonstrates that the obligation to provide an automobile is to continue for so long as the wife is entitled to alimony. Although the provision concerning the automobile in the contract may have been a very bad bargain for Dr. Grijalva, under Syllabus Point 4 of *Hereford, supra,* the circuit court was not entitled to modify the parties' contract after it was confirmed by the trial court at the time the divorce was awarded.

## II

■ The aspect of this case that presents a question of first impression concerns the extent of a court's right to modify contractually determined child support when the reasons for modification do not concern the welfare of the child. Both child support and alimony create a fund for support during the children's minority and *Hereford, supra,* was quite explicit in establishing a policy favoring the literal enforcement of contractual settlements in domestic matters. The exact allocation of money between alimony and child support may be affected by numerous considerations unrelated to an actuarial calculation of the exact cost of maintaining a minor child or children. For example, tax consid-

erations may lead a divorcing couple to denominate a disproportionately high percentage of total payments as child support so that the spouse with higher income will get a needed deduction. Consequently the clear implication of *Hereford, supra,* is that agreements concerning child support, when those agreements are part of an overall settlement of the affairs of the parties, should not be disturbed by the trial court unless a modification is necessary for the welfare of the child.

In the case before us the settlement agreement specifically provides under the heading "Child Support":

Husband agrees that the sum of Five Hundred Dollars ($500.00) per month as child support shall not be reduced until the last infant child attains the age of eighteen (18) years or is otherwise sooner emancipated.

Furthermore the section on "general provisions" provides:

Nor will either party attempt to enforce any decree or judgment which is contrary to, or at variance with, the provisions hereof.

■ The continuing jurisdiction of a circuit court over child support is based on the axiomatic proposition that parents cannot contract away the rights of their children. Because this is the rationale of the reservation of power concerning child support to the circuit court, the logical corollary is that parties cannot invoke the reserved power of the court to modify a child support award in the face of explicit contractual provisions to the contrary when the motivation for seeking a modification concerns the financial status of the parent seeking modification and not the welfare of the child. Simply put, we hold that under the express language to which Dr. Grijalva assented in his voluntary settlement agreement he is estopped from petitioning for a reduction in child support.

■ There is no dispute that in the absence of an explicit contractual agreement the terms of continuing support that are

ment contains the entire understanding of the parties. There are not representations, prom-

ises, warranties, covenants or undertakings other than those expressly set forth herein.

part of a divorce agreement can be modified. In this case, however, both parties have waived their right to such modification. In *Nationwide Mutual Insurance Co. v. Smith*, 153 W.Va. 817, 172 S.E.2d 708, 713, (1970) this Court defined waiver as the intentional or voluntary relinquishment of a known right. In *Smith v. Bell*, 129 W.Va. 749, 41 S.E.2d 695 (1947), we held that any person capable of entering a binding agreement may waive property rights and contractual privileges that exclusively inure to the benefit of that individual. In the case before us, both parties had access to counsel and were presumably aware of their right to modification in the absence of an explicit contractual bar. Both parties were competent and there were no considerations of public policy involved. Therefore their mutual waiver of the right to modification was effective and legally binding.[2]

Accordingly, for the reasons set forth above the judgment of the Circuit Court of Kanawha County is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

## APPENDIX

### SEPARATION AGREEMENT

THIS AGREEMENT, Made this 27th day of August, 1981, by and between *BEATRIZE GRIJALVA, hereinafter referred to as "Wife", and GALO E. GRIJALVA, M.D., hereinafter referred to as "Husband".*

### WITNESSETH:

WHEREAS, the parties hereto are husband and wife and were duly married in the Country of Equador, and have lived in Kanawha County, West Virginia, for more than one (1) year next preceding the date of this Agreement; and

WHEREAS, Husband and Wife desire that there be a complete, final and effective settlement of their respective rights and holdings, that provision be made for the support of their minor children and that provision be made for the relinquishment of all rights, interests and claims which the one party might otherwise have upon the property of the other; and

WHEREAS, three (3) children were born of this marriage, namely, Lizeth Grijalva, born March 17, 1968; Ximena Grijalva, born November 29, 1970; and Galo E. Grijalva, Jr., born March 11, 1966.

NOW, THEREFORE, in consideration of the sum of Ten Dollars ($10.00), cash in hand paid, the receipt of which is hereby acknowledged, and in further consideration of the mutual covenants, agreements and promises contained herein, the parties do hereby agree as follows:

1. *Individual Rights.* The Husband and Wife may live separate and apart from each other, free from interference, authority or control by the other, direct or indirect, as fully as if he or she were single and unmarried. Each may for his or her separate benefit engage in any employment, business or profession he or she may choose. The parties shall not molest or interfere with each other, nor shall either attempt or compel the other to cohabit with or dwell with him or her, by any means whatsoever.

2. *Payments to Wife.* For her lifetime, or until wife shall remarry, whichever event shall first occur, the Husband shall pay to the Wife for her support and maintenance as alimony the sum of One Thousand Five Hundred Dollars ($1,500.00) per month. Husband shall not petition any Court to reduce the aforesaid alimony payments to Wife predicated upon Wife's earnings and her enhanced ability to support herself. Rather, any effort by the Husband to reduce the aforesaid alimony payments shall be based upon a substantial loss in Husband's earning capacity and a corresponding inability of Husband to make the aforesaid alimony payments to

---

**2.** We note that the waiver would not have been binding if "considerations of public policy" were involved. Therefore, if the modification were sought because the welfare of the children was not adequately protected by the agreement as drafted, the parties' waiver of their right to modification would not bar a court from making necessary changes.

Wife. Payments shall be made on the 1st day of each month.

3. *Child Support.* Husband shall pay to the Wife the sum of Five Hundred Dollars ($500.00) in support and maintenance of Lizeth Grijalva, Ximena Grijalva and Galo E. Grijalva, Jr., being the three minor children of the parties. Husband agrees that the sum of Five Hundred Dollars ($500.00) per month as child support shall not be reduced until the last infant child attains the age of eighteen (18) years or is otherwise sooner emancipated. In the event, and only in the event, that the Wife shall remarry and the alimony as provided in paragraph 2 is terminated, the parties hereto specifically agree that the Five Hundred Dollars ($500.00) per month to be paid by the Husband as child support as contemplated herein shall be increased to One Thousand Dollars ($1,000.00) per month as child support and shall not be reduced until the last infant child attains the age of eighteen (18) years or is otherwise sooner emancipated.

4. *Education of Children.* If any of the minor children shall attend a college or university to seek a basic four (4) year bachelor's degree or a trade school, a vocational school, or the equivalent, Husband shall pay all transportation, tuition, fees, and textbook expenses indidental [sic] thereto, and if any such children live outside the home for that purpose, Husband shall pay also all reasonable living expenses incidental to said college education, provided, however, Husband's liability hereunder shall be limited to the amount of expenses ordinarily incurred in connection with four (4) years of undergraduate study by an in-state resident at one of the state universities in the State of West Virginia, provided, further, that the Husband agrees to continue without offset the child support payments herein set forth in the next preceding paragraph for so long as any of the infant children remains in pursuit of their education as contemplated herein.

5. *Custody and Visitation with Minor Children.* Custody of the minor children, Lizeth, Ximena and Galo, Jr., shall be in the Wife. So long as the Husband complies with the terms of this Agreement, he shall be entitled to reasonable rights of visitation with the minor children at such times as does not interfere with their health, education and welfare and at times compatible with their activities and insofar as possible compatible with the desires of the children and parents. Husband and Wife shall cooperate together in order to arrange the precise times of visitation, but it is the intent of both parties that Husband shall have liberal privileges of visitation, provided, however, that the Husband's right of visitation shall not unreasonably interfere with Wife's permanent custody and, provided, further, that it shall not interfere with the children's health, education and welfare. Husband shall have the right to telephone and speak with the minor children at a reasonable hour and for reasonable lengths of time. Further, neither the Husband nor Wife shall attempt to influence the minor children against the other of them.

Husband and Wife agree, and it is hereby set forth, that the Husband shall have the right to visitation with the minor children during the summer school vacation months, when the children are not in school, which right shall include the right to take or travel with the children for vacation pruposes [sic] within the State of West Virginia, or without the State of West Virginia, as the Husband may so choose for a reasonable period of time.

Husband and Wife shall hold paramount the children's well-being and maintain the obligation to consult with each other in order to serve the best interests of the children. Furthermore, each of the parties shall strive to promote nonstressful feelings of security and affection between the children and the other party and/or involvement with other persons by the other party.

6. *Parties' Residence.* The marital residence located at 814 Daverton Road in the City of Charleston, Kanawha County, West Virginia, shall remain in its present ownership with each party owning a one-half (½) undivided interest with rights of survivorship. The Husband shall made [sic] the

mortgage payments of Four Hundred Twenty Dollars ($420.00) per month, including taxes and insurance when due until such time as the note secured by the deed of trust is fully paid and satisfied, the Wife remarries, or the residence is sold as set forth herein. The Husband agrees to pay for any and all maintenance which is necessary upon the residence and further specifically agrees to provide adequate heating in the basement, carpeting in the basement, and paneling on the walls of the basement. The parties agree that if and when the residence is sold, after first applying the proceeds to any unpaid mortgages for which the property has been pledged as security, the remaining balance shall be divided into five (5) equal parts and the Husband shall be entitled to a one-fifth (⅕) portion of the equity. If and when the residence should be sold, and the parties cannot agree upon a sales price, each party shall be entitled to choose an appraiser and the sale price shall be that of the highest appraiser or the average of the appraisers, as the parties may so elect.

7. *Insurance Benefits.* Husband agrees to mintain [sic] health and dental insurance upon the Wife and infant children and agrees to provide all medical and dental care necessary, including office visits, medical prescriptions and supplies. The Husband shall further purchase a life insurance policy in the amount of Three Hundred Thousand Dollars ($300,000.00) and shall name as beneficiaries thereof the Wife and the three infant children.

8. *Future Increases.* The parties hereto agree that the amount of alimony and child support herein shall increase without judicial intervention. It is agreed that the Husband shall increase the alimony and child support paid in periodic payments after the year 1982 by the percentage that the Husband's gross personal income for the year 1982 exceeds his gross personal income for the year 1981. For each successive year, the Husband shall increase the alimony and child support in the same percentage that his gross personal income exceeds his gross personal income for the previous year.

9. *Furniture and Household Goods.* Husband does hereby grant and convey all of his right, title and interest in and to the furniture, furnishings, household goods and the like now located at the parties' residence, said residence being presently occupied by Wife at 814 Daverton Road, Charleston, West Virginia, and that Wife shall have the same as her own separate property to the complete exclusion of Husband. Wife does hereby grant and convey all of her right, title and interest in and to the items of personal property presently in possession of the Husband.

10. *Vehicles.* Wife agrees to transfer all her right, title and interest in and to the 1977 Honda Accord to Husband along with her interest in any policies of insurance covering said vehicle. Husband shall convey all of his right, title and interest in and to the 1979 Oldsmobile along with his interest in any policies of insurance covering said vehicle. Husband agrees to timely make the balance of payments on the 1979 Oldsmobile and at the fifth anniversary of said 1979 Oldsmobile and at five (5) year intervals thereafter, to provide to Wife a new automobile comparable thereto. Husband further agrees to provide to Wife at his expense a major oil company credit card against which Wife may use for payment of all gas, oil, maintenance, repairs and upkeep of said automobile.

11. *Release of Personal Property.* The parties hereby release all of their respective right, title and interest in and to each other's clothing and personal effects wherever the same may be located.

12. *General Provisions.*

a. If either party shall hereafter obtain a decree of divorce against the other, this agreement and the provisions hereof shall, by reference or otherwise, be incorporated in and become part of said decree, and the party obtaining such decree of divorce shall not incorporate, attempt to incorporate or cause to be incorporated any provision in such decree contrary to, or at variance with, the terms of this agreement, nor will either party attempt to enforce any decree or judgment which is contrary to, or at variance with, the provisions hereof.

b. This agreement shall be binding and obligatory upon the parties, notwithstanding any judgment recovered by either of them against the other in any action for divorce or any decree made therein in the State of West Virginia or elsewhere, and each and every paragraph and provision hereof shall survive any such judgment or decree, notwithstanding that such judgment or decree may incorporate only a portion or part of this agreement and notwithstanding that the parties may subsequently in any such action enter into a stipulation embodying or incorporating only a part or portion of this agreement.

c. All payments to Wife under this agreement shall be considered as contractual alimony as provided in this agreement, and in view of the contractual obligation to increase the alimony, the enforcement of the alimony provision shall be by contractual remedy.

d. Both the legal and practical effect of this agreement, in each and every respect, and the financial status of the parties, have been fully explained to both parties, and they both acknowledge that it is a fair agreement and is not the result of any fraud, duress or undue influence exercised by either party upon the other or by any other person or persons upon either, and they further agree that this agreement contains the entire understanding of the parties. There are no representations, promises, warranties, covenants or undertakings other than those expressly set forth herein.

e. The failure of either of the parties to insist, in any one or more instances, upon a strict performance of any of the covenants or provisions of this agreement shall not be construed as a waiver or a relinquishment for the future of such covenant or provisions, but the same shall continue and remain in full force and effect.

f. This agreement shall be binding, not only on the parties hereto, but also upon the respective heirs, executors, administrators and assigns of said parties.

g. This agreement shall be governed and construed by the laws of the State of West Virginia.

h. Cohabitation by the parties shall not affect this agreement, unless the parties sign a written memorandum stating that a reconciliation has taken place and that they wish to abrogate this agreement in its entirety.

i. Inasmuch as paragraph 7 above contemplates that the Husband shall keep a life insurance policy in full force and effect with the Wife and infant children as beneficiaries, in the event of the Husband's death, the payment to be made by the Husband herein shall not be an obligation of the Husband's estate unless the policies are not in effect at the time of his death.

j. Husband agrees to pay Wife's legal fees incurred and to be incurred in connection herewith, as well as all fees and costs incurred in connection with a divorce action to be brought by Wife on the basis of irreconcilable differences.