408 S.E.2d 51

**Ronald L. WYATT, Sr. Plaintiff Below, Appellee,**

**v.**

**Kimberly Ann WYATT Defendant Below, Appellant.**

No. 19787.

Supreme Court of Appeals of West Virginia.

Submitted May 14, 1991.

Decided July 16, 1991.

Cheryl L. Warman, James F. Sigwart II, Warman & Sigwart, Morgantown, for appellee.

Beth Longo Child Advocate Atty., Elkins, for appellant.

MILLER, Chief Justice:

This case is before us on appeal of a final order of the Circuit Court of Barbour County, entered April 12, 1990, by the Honorable John L. Waters. The appellant, Kimberly Ann Wyatt, asks us to reverse that order, which denied child support for the period from May 1988 to May 1990.

The parties to this action, Mrs. Wyatt and her former husband, Ronald L. Wyatt, Sr., were divorced on May 3, 1988, by order of the Circuit Court of Barbour County. The final divorce order ratified, approved, and confirmed a property settlement agreement entered into by the parties on April 19, 1988. This property settlement agreement granted custody of the parties' four children to Mrs. Wyatt. It provided that Mr. Wyatt would pay no child support for them during the time that he was completing his advanced education and up until the time when he had been gainfully employed for a period of at least ninety days. In ratifying the property settlement agreement, the circuit judge noted that he was not bound by the provisions regarding child support. However, no alternative provisions were made in the divorce decree.

Apparently in contemplation of the impending divorce decree, Mrs. Wyatt applied to the West Virginia Department of Human Services (Department) for Aid to Families with Dependent Children (AFDC) benefits. In compliance with the law, Mrs. Wyatt executed an assignment of her support rights to the Department on April 4, 1988. Mrs. Wyatt received her initial support payment of $360 per month from the Department in May 1988.

After the divorce, Mr. Wyatt continued his studies toward a bachelor's degree in mining engineering at West Virginia University. While engaged in these studies, Mr. Wyatt participated in a cooperative education program through which he was employed by the Mine Safety and Health Administration (MSHA). Mr. Wyatt earned approximately $910 per month while thus employed. He did not inform Mrs. Wyatt or the Department of his employment. When it came to their attention, he indicated that the job was temporary in nature.

After holding his position with MSHA for approximately one and one-half years, Mr. Wyatt quit in early 1990 and took a job paying approximately $400 per month. In reliance upon the divorce decree, Mr. Wyatt paid no child support during this period.

In December 1989, the Department and Mrs. Wyatt filed a petition for child support in the Circuit Court of Barbour County. This case was litigated by the Department as the subrogee of Mrs. Wyatt's rights to child support from Mr. Wyatt. A hearing was held before the family law master, who submitted his recommended decision to the circuit court on March 19, 1990. The family law master found that the Department had paid $360 per month to Mrs. Wyatt for the support of her children from May 1988 through March 1990, for a total of $8,280. He found that Mr. Wyatt had breached his duties of good faith and fair dealing by failing to notify Mrs. Wyatt of his employment status. He further found that Mr. Wyatt had the ability to pay $460 per month in child support during his period of employment with the MSHA. He also found that Mr. Wyatt had no intention of paying child support at all and would continue to delay his obligation as long as possible.

The family law master concluded that the property settlement agreement should be modified because it violated public policy by allowing Mr. Wyatt to postpone indefinitely the support of his children. However, he further concluded that any modification of the support could be prospective only. He then designed an award without regard to the guidelines for child support awards,[1] noting that "historic abuse by plaintiff of provisions of the agreement concerning child support has led to a deprivation of the parties' children's financial needs." He recommended that Mr. Wyatt be ordered to pay $125 per month in child support beginning on April 1, 1990.

The Department and Mrs. Wyatt then filed a petition for review in the Circuit Court of Barbour County, seeking reimbursement for the child support paid through AFDC, as well as an order requiring Mr. Wyatt to keep Mrs. Wyatt informed of his employment status. In a final order entered on April 12, 1990, the circuit court adopted and incorporated by reference the family law master's findings of fact and conclusions of law. The court then modified the child support, disregarding, as did the family law master, the guidelines. The court ordered Mr. Wyatt to pay $125 per month in child support beginning on May 1, 1990. It is from this order that Mrs. Wyatt and the Department appeal, seeking reimbursement support for the period from entry of the divorce order to entry of the modified support order.

We previously addressed the issue of reimbursement of AFDC payments in *State ex rel. Department of Human Services v. Huffman*, 175 W.Va. 401, 332 S.E.2d 866 (1985), where the Department filed suit to recoup from Mr. Huffman payments of AFDC benefits for support of his three children. The circuit court "held that in the absence of a court order fixing support or an administrative hearing fixing the amount of support ... there is no basis for a judgment against such a parent." 175 W.Va. at 403, 332 S.E.2d at 868.

■ In *Huffman*, there was no original court order establishing a monthly child support payment. The Department had not proceeded to an administrative hearing to establish what would be a reasonable amount; it merely sought a judgment on the total amount of AFDC payments made. We stated in Syllabus Point 2 that the Department's rights must be balanced against the spouse's ability to pay and that at a hearing on a suit to collect the full AFDC payments, consideration must be given to the ability to pay:

"The Department of Human Services receives only those rights to recoupment of benefits paid under the Aid to Families with Dependent Children Program (AFDC) that an AFDC recipient could assign: the recipient's right to support and maintenance. That right to support and maintenance is dependent upon the ability of the responsible relative to pay,

---

1. *See* 6 W.Va.C.S.R. § 78–16 (1988).

and the determination of ability to pay must be made through an administrative hearing or court proceeding."

■ In *Fenton v. Miller,* 182 W.Va. 731, 391 S.E.2d 744 (1990), we next considered in what forum the hearing was to be held to determine the appropriate amount of AFDC support to be repaid to the Department. We concluded in Syllabus Point 1:

"The formal hearing that this court has required in *State ex rel. Department of Human Services v. Huffman,* 175 W.Va. 401, 332 S.E.2d 866 (1985), is placed by statute in the West Virginia circuit courts and the family law masters, at such time as a Child Advocate seeks a judgment for back support."

In this case, such a hearing was held before the family law master. The ability to pay was established at $360 per month. The only reason that a judgment was not rendered was because the family law master and the circuit judge believed that this would constitute retroactive child support. *See Goff v. Goff,* 177 W.Va. 742, 356 S.E.2d 496 (1987). However, as *Huffman* demonstrates, this principle is not applicable to AFDC payments because W.Va.Code, 9–3–4 (1979), assigns the support rights to the Department to the extent of AFDC payments made. In speaking of the statute, in *Huffman* we said: "[T]he Department of Human Services stands in the place of, and succeeds to all the legal rights and remedies of, a parent or guardian to maintain an action to enforce these rights." 175 W.Va. at 404, 332 S.E.2d at 869.

We agree with the family law master that the property settlement agreement involved in this case violates the public policy of this State which requires parents to support their children. This duty has been codified in W.Va.Code, 48A–1–2 (1986), which reads, in pertinent part: "It is the intent of the Legislature that to the extent practicable, the laws of this state should encourage and require a child's parents to meet the obligation of providing that child with adequate food, shelter, clothing, education, and health and child care."

■ The duty of a parent to support a child is a basic duty owed by the parent to the child, and a parent cannot waive or contract away the child's right to support. In *Grijalva v. Grijalva,* 172 W.Va. 676, 679, 310 S.E.2d 193, 197 (1983), we said: "The continuing jurisdiction of a circuit court over child support is based on the axiomatic proposition that parents cannot contract away the rights of their children." [2] Other courts have come to a similar conclusion that a parent cannot waive or contract away the child's right to support. *E.g., Cox v. Cox,* 776 P.2d 1045 (Alaska 1989); *Aumock v. Aumock,* 410 N.W.2d 420 (Minn.App.1987); *In re Marriage of Pippins,* 46 Wash.App. 805, 732 P.2d 1005 (1987). Consequently, Mrs. Wyatt could not waive Mr. Wyatt's obligation to support their children in the separation agreement.

■ We also note that W.Va.Code, 48A–2–8(a) (1989), provides for the establishment of guidelines for child support awards, which shall be applied by the family law masters and courts except in very specific circumstances.[3] The statute allows

---

**2.** This proposition is consistent with the language of W.Va.Code, 48–2–16(a) (1984), which deals with separation agreements and provides, in relevant part: "Child support shall, under all circumstances, always be subject to continuing judicial modification."

**3.** W.Va.Code, 48A–2–8(a) (1989), reads:
"The director of the child advocate office shall, by legislative rule, establish guidelines for child support award amounts so as to ensure greater uniformity by those persons who make child support recommendations and enter child support orders, and to increase predictability for parents, children and other persons who are directly affected by child support orders. There

shall be a rebuttable presumption, in any proceeding before a family law master or circuit court judge for the award of child support, that the amount of the award which would result from the application of such guidelines is the correct amount of child support to be awarded. A written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case shall be sufficient to rebut the presumption in that case. The guidelines shall not be followed:
"(1) When the child support award proposed to be made pursuant to the guidelines has been disclosed to the parties and each party has made a knowing and intelligent waiver of said

for a "knowing and intelligent waiver" of the guideline amount by the parties, provided that an alternative agreement has been made which provides for support of the child. It also permits a variance where the guidelines would be contrary to the best interests of the child or the parties. Finally, a variance is permissible if a finding is made that the guidelines would be unjust or inappropriate in a particular case. We summarized these provisions in Syllabus Point 3, in part, of *Gardner v. Gardner*, 184 W.Va. 260, 400 S.E.2d 268 (1990):

> "[T]he amount of child support shall be in accordance with the child support guidelines established pursuant to *W.Va. Code*, 48A–2–8(a) [1989], unless the family law master or the court shall determine, in a written finding or a specific finding on the record, that the application of the guidelines would be either unjust, inappropriate, waived by the parties pursuant to the safeguards outlined in *W.Va.Code*, 48A–2–8(a)(1) [1989], or contrary to the best interests of the children or the parties."

It is possible for the parties under W.Va. Code, 48A–2–8(a)(1) to establish by a separate agreement a different amount than that required by the child support guidelines. This can only be done according to the statutory mandate by a disclosure of the guideline amount and a knowing and intelligent waiver of that amount.

 W.Va.Code, 48A–2–8(a)(1) does not enable a parent to completely waive child support. The language of this subsection states that the parties must still enter "into an agreement which provides for the custody and support of the child or children." Other courts have concluded that a separation agreement may not waive child support under federally-mandated child support guidelines similar to W.Va.Code, 48A–2–8. *See, e.g., Cox v. Cox, supra; Ching v. Ching*, 7 Haw.App. 221, 751 P.2d 93 (1988).

amount, and the support obligors have entered into an agreement which provides for the custody and support of the child or children of the parties; or

 Based upon the foregoing, we find that the circuit court and family law master erred in not setting the amount Mr. Wyatt should reimburse the Department for AFDC benefits under the principles set out in *Huffman*. Furthermore, Mrs. Wyatt would be entitled to the child support presently awarded even though it may have exceeded the guideline amount. The special finding made by the family law master that it was appropriate to go above the guidelines because of Mr. Wyatt's inequitable and unjust conduct was proper. Consequently, the final order is affirmed in part and reversed in part and remanded with directions.

Affirmed in part; reversed in part; and remanded with directions.

"(2) When the child support award proposed to be made pursuant to the guidelines would be contrary to the best interests of the child or children, or contrary to the best interests of the parties."