432 S.E.2d 543

**Michael L. ROBINSON, Plaintiff Below, Appellee**

v.

**Debra Catherine Robinson McKINNEY, Defendant Below, Appellant.**

**No. 21549.**

Supreme Court of Appeals of West Virginia.

Submitted May 5, 1993.

Decided June 24, 1993.

J.C. Pomponio, Jr., Child Advocate Office, Lewisburg, for appellant.

Gordon T. Ikner, Gordon T. Ikner & Associates, L.C., Lewisburg, for appellee.

Justice McHUGH delivered the Opinion of the Court.

This case is before the Court upon the appeal of Debra Catherine Robinson McKinney from the August 12, 1992 order of the Circuit Court of Greenbrier County. The appellee is Michael L. Robinson. For reasons set forth below, we reverse the circuit court's order and remand the case for further proceedings consistent with this opinion.

I

The appellant, who is the mother, and the appellee, who is the father, were divorced by an order of the circuit court dated February 7, 1977. At that time custody of the minor child was granted to the mother, and the father was ordered to pay $100.00 per month in child support.

On December 2, 1977, the custody of the child was transferred from the mother to the father by a court order. The December 2, 1977 order was silent on the issue of child support payments. However, the parties agreed that the child support payments would be discontinued after the December 2, 1977 order was entered since the father had custody of the child.

Five years later, in September of 1982, the parties made another agreement in which the custody of the child would be returned to the mother.[1] No court order was entered reflecting the transfer of custody of the child to the mother. The father states that he told the mother he would not pay child support if the child was returned to her. If the mother could not support the child on her own, then the child would be returned to the father. The mother agreed to the change in custody and acquiesced to the father's statement that he would not provide child support. The mother had custody of the child from September of 1982 until May of 1989, when the child turned 18 years old, with the exception of three months and some visitation in the summer.

1. The mother in her brief states that the agreement that she would have custody of the child occurred in September of 1983; however, the August 12, 1992 order and the testimony of the father and mother at the June 29, 1992 hearing indicate that the correct date is September of 1982.

The mother represents that the present action arose when she sought to enforce the original child support order of $100.00 per month for the time period during which she had custody of the child by garnishing the father's wages. The father had requested that a *nunc pro tunc* order be entered to reflect that the parties had agreed to terminate child support when the custody of the child was transferred to the father on December 2, 1977.

The Circuit Court of Greenbrier County held in its August 12, 1992 order that it could not enter a *nunc pro tunc* order since the December 2, 1977 order was an agreed to order which did not address the issue of child support; therefore, there was no order regarding child support intended by the circuit court. The circuit court also applied the doctrine of laches and held that the mother could not recover child support payments "due to the agreement of the parties and the passage of time." It is from this August 12, 1992 order that the mother seeks relief.

## II

■ We first address the mother's contention that the circuit court erred by applying the doctrine of laches to bar unpaid child support. We agree with the mother that the ten-year statute of limitations set forth in *W.Va.Code,* 38–3–18 [1923] applies in this case and not the doctrine of laches.[2]

In *Korczyk v. Solonka,* 130 W.Va. 211, 218, 42 S.E.2d 814, 819 (1947), this Court stated that "[W.Va.] Code, 38–3–1, 2, provide that decrees for the payment of money shall have the same effect as a judgment. Enforcement of such decretal judgment can be barred by the statute of limitations, but its enforcement may not be barred by laches." We have continued to follow the above statement set forth in *Korczyk. See Hudson v. Peck,* 183 W.Va. 300, 395 S.E.2d 544 (1990) and *Zanke v. Zanke,* 185 W.Va. 1, 404 S.E.2d 92 (1991).

However, in *Zanke, supra* at n. 5, we noted that the doctrine of laches was applied in *Hartley v. Ungvari,* 173 W.Va. 583, 318 S.E.2d 634 (1984). In *Hartley* the husband had not been personally served in the divorce action; however, the wife later attempted to collect past support expenses after the circuit court acquired personal jurisdiction over the husband. We held that the doctrine of laches barred the wife's suit to collect past support expenses since the wife had a number of opportunities in the past to obtain personal service and did not do so.

*Hartley* is distinguishable from the case before us because in *Hartley* the circuit court did not originally have jurisdiction to order support payments from the husband. Therefore, there was no enforceable original order in *Hartley,* and the wife failed to obtain personal jurisdiction on many occasions when she had the opportunity so that an enforceable order could be entered. Unlike *Hartley,* in the case before us there is an original enforceable order which awards child support. Furthermore, that order has never been modified.

■ In syllabus point 2 of *Goff v. Goff,* 177 W.Va. 742, 356 S.E.2d 496 (1987), we stated: "The authority of the circuit courts to modify alimony or child support awards is prospective only and, absent a showing of fraud or other judicially cognizable circumstance in procuring the original award, a circuit court is without authority to modify or cancel accrued alimony or child support installments."

In the case before us there is no evidence of fraud or of another judicially cognizable circumstance which would allow the circuit court to modify the child support award retroactively. Although there was an order entered which changed the custody of the child from the mother to the father after the original divorce order was entered, the order failed to reflect anything about child support. Therefore, the doctrine of laches cannot be applied to modify the child support award.

2. *W.Va.Code,* 38–3–18 [1923] states, in part, that "[o]n a judgment, execution may be issued within ten years after the date thereof."

■ Furthermore, in syllabus point 1 of *Goff v. Goff, supra*, we stated that "[m]atured installments provided for in a decree, which orders the payment of monthly sums for alimony or child support, stand as 'decretal judgments' against the party charged with the payments." Accordingly, we hold under *Korczyk, supra,* that the ten-year statute of limitations set forth in *W.Va.Code*, 38–3–18 [1923] and not the doctrine of laches applies when enforcing a decretal judgment which orders the payment of monthly sums for alimony or child support. Therefore, in the case before us, the mother is not barred by the statute of limitations from collecting child support from September of 1982 until May of 1989, the time period during which the child resided with her, since the mother began the collection process in early 1992 by a Notice to Employer/Source of Income dated February 18, 1992 and by a motion to establish arrearages dated March 12, 1992.

### III

■ Next, we address the mother's contention that the circuit court erred by finding that the mother could not recover child support due to the agreement of the parties and the passage of time. We will also address the father's contention that the mother is equitably estopped from seeking enforcement of the initial order of child support.

■ In general, courts have closely guarded children's rights since they are often voiceless. In particular, during and after the parents' divorce, courts have sought to ensure that the child receives the support he or she is entitled to receive. In fact, this Court has stated that "[t]he duty of a parent to support a child is a basic duty owed by the parent to the child, and a parent cannot waive or contract away the child's right to support." Syl. pt. 3, *Wyatt v. Wyatt*, 185 W.Va. 472, 408 S.E.2d 51 (1991). Furthermore, we have stated that "[a] decretal child support obligation may not be modified, suspended, or terminated by an agreement between the parties to the divorce decree." Syl. pt. 2, *Kimble v. Kimble*, 176 W.Va. 45, 341 S.E.2d 420 (1986).

We have attempted to ensure that the children do not become a pawn whereby one parent can withhold custody of the children until the other parent agrees to not request child support.

■ We have also sought to clarify the circuit court's role by stating that "[a] circuit court lacks the power to alter or cancel accrued installments for child support." Syl. pt. 2, *Horton v. Horton*, 164 W.Va. 358, 264 S.E.2d 160 (1980). We find the circuit court's role crucial in ensuring that the best interests of the child are considered when determining whether a child support obligation should be modified or terminated.

Although we have clearly stated in the past that parties to the divorce decree cannot by an agreement modify or terminate a decretal child support obligation, we have in rare circumstances applied the doctrine of equitable estoppel. For example, in *Kimble, supra* at syl. pt. 3, this Court held that if a party, who is responsible for child support payments, has signed a formal consent to the adoption of his child which releases the party from child support payments, and the adoption is not consummated to the detriment of the noncustodial parent due to the inaction of the custodial parent, then the custodial parent is estopped from seeking the child support payments if the welfare of the child is not adversely affected. However, *Kimble* is easily distinguishable from the case before us. In the case before us we do not have a formal consent to the adoption of the child which releases the father from his child support obligation.

Furthermore, in *Grijalva v. Grijalva*, 172 W.Va. 676, 310 S.E.2d 193 (1983), this Court held that the parties were estopped from seeking modification of an agreed to child support award unless the welfare of the child is directly affected. However, *Grijalva*, like *Kimble*, is distinguishable from the case before us. In *Grijalva*, the agreed to child support was written in the separation agreement which was adopted by the circuit court. In the case before us, the agreement between the parties to terminate child support was not a written

agreement which was approved by the circuit court.

In *Lauderback v. Wadsworth*, 187 W.Va. 104, 416 S.E.2d 62 (1992), this Court declined to apply the doctrine of equitable estoppel. In *Lauderback* the mother had agreed in a 1981 post-divorce agreement to accept $25,000.00 for her share in the jointly owned real estate and for all past and future child support. In 1990, with the help of the child advocate office, the mother sought to enforce the child support order.

The father essentially argued that the 1981 agreement estopped the mother from seeking unpaid child support. This Court disagreed and held that the mother could seek unpaid child support based on *Kimble, supra,* and *Goff, supra.* In *Kimble* we stated that a child support obligation may not be modified or terminated by agreement between the parties. In *Goff* we stated that the circuit court's authority to modify or terminate child support is prospective.

The facts in the case before us are similar to the facts in *Lauderback.* The case before us does not involve the rare circumstances described in *Kimble* or *Grijalva* in which we have applied the doctrine of equitable estoppel. Therefore, the parties in the case before us cannot modify the original child support order by agreement nor can the circuit court modify the original child support order retroactively.

■ Furthermore, the following language found in *W.Va.Code*, 48–2–15(e) [1991],[3] in part, gives the circuit court the power to alter an order concerning child support:

The court may also from time to time afterward, on the verified petition of either of the parties or other proper person having actual or legal custody of the minor child or children of the parties, revise or alter such order concerning the custody and support of the children, and make a new order concerning the same, issuing it forthwith, as the circumstances of the parents or other proper person or persons and the benefit of the children may require[.]

The *W.Va.Code* also provides that "[c]hild support shall, under all circumstances, always be subject to continuing judicial modification." *W.Va.Code*, 48–2–16(a) [1984]. Therefore, the legislature envisioned that the circuit court would have an important role in ensuring that children of divorces receive adequate support.

The Supreme Court of Illinois points out:

Allowing former spouses to modify a court-ordered child support obligation by creating a new agreement between themselves without judicial approval would circumvent judicial protection of the children's interests. Former spouses might agree to modify child support obligations, benefiting themselves while adversely affecting their children's best interests. Parents may not bargain away their children's interests.... It is for this reason, then, that parents may create an enforceable agreement for modification of child support only by petitioning the court for support modification and then establishing, to the satisfaction of the court, that an agreement reached between the parents is in accord with the best interests of the children.

*Blisset v. Blisset*, 123 Ill.2d 161, 121 Ill. Dec. 931, 934, 526 N.E.2d 125, 128 (1988) (citations omitted).[4] We agree with the above statement. Accordingly, we hold that in order to ensure that the best interests of the child are considered, ordinarily an agreement to modify or terminate a child support obligation is effective only

---

3. *W.Va.Code*, 48–2–15(e) was amended in 1992; however, the amendments do not affect the case before us.

4. We note that there are other jurisdictions which do allow the parties to modify child support by agreement; however, we decline to follow those jurisdictions. *E.g., Tinnell v. Tinnell,* 681 S.W.2d 918 (Ky.Ct.App.1984). *See* Kristine

C. Karnezis, *Validity and Effect, as Between Former Spouses, of Agreement Releasing Parent from Payment of Child Support Provided for in an Earlier Divorce Decree,* 100 A.L.R.3d 1129 (1980) for a complete discussion on the effect of an agreement releasing a parent from payment of child support provided for in an earlier decree.

upon entry of a court order, authorized by *W.Va.Code,* 48–2–15(e) [1991], which modifies or terminates the child support obligation. In the case before us, there was no court order which modified or terminated the February 7, 1977 order which awarded the mother child support. Therefore, the February 7, 1977 order is still in effect, and the mother can enforce the order *for the time period during which she had custody of the child, which is from September of 1982 until May of 1989, through a garnishment action.*

## IV

The last issue is the father's contention that the circuit court should have entered a *nunc pro tunc* order correcting the December, 1977 order which awarded custody to the father so that it addressed the child support issue. The father states that when custody was awarded to him in 1977 the parties intended for the child support obligation to terminate.

The father points to *W.Va.R.Civ.P.* 60(a), which states, "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission *may* be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders." (emphasis added). The use of the term "may" in Rule 60(a) indicates that the court's authority to correct errors is discretionary.

Furthermore, in syllabus point 3 of *State ex rel. Palumbo v. County Court of Kanawha County,* 151 W.Va. 61, 150 S.E.2d 887 (1966), we stated "[a] nunc pro tunc order must be based on some memorandum on the records relating back to the time it is to be effective and such order cannot be entered if the rights of the parties may be adversely affected thereby." In the case before us, there was no memorandum on the records which indicated that child support was to be addressed in the December, 1977 order. Also, the rights of the mother would be adversely affected by the entry of a *nunc pro tunc* order.

## V

Accordingly, the August 12, 1992 order of the Circuit Court of Greenbrier County is reversed, and this case is remanded to that court for proceedings consistent with our holding.

Reversed and remanded.