479 S.E.2d 895

**STATE of West Virginia ex rel. BARBARA JEAN S., Plaintiff Below, Appellant,**

v.

**STEPHEN LEO S., Defendant Below, Appellee.**

No. 23326.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 18, 1996.

Decided Nov. 20, 1996.

Charles B. Mullins, II, Pineville, for Defendant Below, Appellee.

R. Jeffrey Johnson, Office of the Child Advocate, Charleston, for Plaintiff Below, Appellant.

PER CURIAM:

This is a domestic relations case involving child support arrearage. The appellant, Barbara Jean S., appealed from a final order of the Circuit Court of Wyoming County setting aside the recommended order of the family law master. The family law master recommended the appellee, Stephen Leo S., pay appellant $28,000 in child support arrearage. The circuit court's order nullified payment of arrearage in any amount. The appellant seeks to have the family law master's recommendation reinstated.[1]

I.

This case starts out with the divorce granted to the appellant and appellee on January

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996 and continuing until further order of this Court.

30, 1987. The divorce decree awarded custody of the parties' two children to the appellant.[2] The decree also awarded appellant $300 per month in alimony and obligated the appellee to pay $500 per month in child support payments. In 1989, the appellant decided to marry Thomas Crouse. Also in the same year, the appellee decided to marry Sharon Crouse. The record indicates that Thomas and Sharon were previously wed and had three children from their marriage. Prior to the remarriage of the four individuals, they each executed an agreement on November 17, 1989, which purported to absolve the appellee of child support payments to the appellant. Under the agreement, Thomas Crouse was obligated to provide for the support of appellant's two children. In turn, the appellee agreed to provide for the support of Thomas' three children.[3] The record indicates that the four individuals eventually carried out their marriage plans.

In 1994, the appellant and appellee ended up in front of a family law master.[4] The appellant sought to enforce arrearage payment of child support from November 17, 1989, to the date of filing her petition for modification of the divorce decree. The appellee, on the other hand, requested that the alimony and child support provisions in the divorce decree be terminated. A hearing on the matters was held by the family law master. The appellee argued that his obligation to pay child support was removed by the agreement between the parties on November 17, 1989, and because of the fact that both children were now emancipated—one child having become emancipated by age, while the other became emancipated through marriage.

The family law master issued her recommended order which required the appellee to pay child support arrearage for the period November, 1989 to June, 1994, in the amount of $28,000. It was further recommended that the alimony provision be terminated, and that the child support payments be reduced from $500 per month to $389.70 per month starting March, 1995. The family law master continued the child support for the youngest child, even though said child was emancipated through marriage.

The appellee objected to the family law masters' recommendation, insofar as it obligated him to pay arrearage child support and future child support. By order entered May 5, 1995, the circuit court set aside the family law master's recommendation. This appeal followed. The appellant is asking that the family law master's recommendation be reinstated.

## II.

In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential review standard. Our review of the final order and the ultimate disposition are made under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review. See Syl. Pt. 1, *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995); *Phillips v. Fox*, 193 W.Va. 657, 661, 458 S.E.2d 327, 331 (1995). We stated in Syllabus Point 1 of *Stephen L.H. v. Sherry L.H.*, 195 W.Va. 384, 465 S.E.2d 841 (1995), that:

> 11. That Thomas D. Crouse is to provide full support and provisions, including all medical, dental, and optical expenses for Barbara S[.] and her [two] children[.]

---

2. At the time of the divorce the parties' two children were eight (8) and twelve (12) years of age.

3. The pertinent language in the agreement stated:

> 6. That Steve S[.] shall pay no alimony, child support, car payments or any other payments to his ex-wife, Barbara S[.].
>
> \* \* \* \* \* \*
>
> 10. That Steve S[.] is to provide full support and provisions, including all medical, dental, and optical expenses for Sharon Crouse and her three (3) infant children. . . .

4. The record appears conflicting as to how the parties ended up in the family law master court. The appellant's brief indicates that she initiated matters by filing a petition for modification of the divorce decree. The appellee's brief indicates that he initiated matters by filing a petition for modification of the divorce decree.

"A circuit court should review findings of fact by a family law master only under a clearly erroneous standard, and it should review the application of law to the facts under an abuse of discretion standard."

We also held in Syllabus Point 3 of *Stephen L.H.* that:

"Under the clearly erroneous standard, if the findings of fact and the inferences drawn by a family law master are supported by substantial evidence, such findings and inferences may not be overturned even if a circuit court may be inclined to make different findings or draw contrary inferences."

Finally, under Syllabus Point 4 of *Stephen L.H.* we stated that:

"If a circuit court believes a family law master failed to make findings of fact essential to the proper resolution of a legal question, it should remand the case to the family law master to make those findings. If it is of the view that the findings of fact of a family law master were clearly erroneous, the circuit court may set those findings aside on that basis. If it believes the findings of fact of the family law master are unassailable, but the proper rule of law was misapplied to those findings, the circuit court may reverse. However, a circuit court may not substitute its own findings of fact for those of a family law master merely because it disagrees with those findings."

▉▉▉▉ The first issue we must address is whether the appellant's delay in prosecuting this claim for child support arrearage is foreclosed by the doctrine of laches. In Syllabus Point 4 of *Laurie v. Thomas,* 170 W.Va. 276, 294 S.E.2d 78 (1982), we indicated that " '[t]he general rule in equity is that mere lapse of time, unaccompanied by circumstances which create a presumption that the right has been abandoned, does not constitute laches.' Syllabus Point 4, *Stuart v. Lake Washington Realty Corporation,* 141 W.Va.

627, 92 S.E.2d 891 (1956)." Time, standing alone, is insufficient to trigger the doctrine of laches. In Syllabus Point 5 of *Laurie* we held:

" 'Where a party knows his rights or is cognizant of his interest in a particular subject-matter, but takes no steps to enforce the same until the condition of the other party has, in good faith, become so changed, that he cannot be restored to his former state if the right be then enforced, delay becomes inequitable, and operates as an estoppel against the assertion of the right. This disadvantage may come from death of parties, loss of evidence, change of title or condition of the subject-matter, intervention of equities, or other causes. When a court of equity sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief.' Syllabus Point 3, *Carter v. Price,* 85 W.Va. 744, 102 S.E. 685 (1920); Syllabus Point 2, *Mundy v. Arcuri,* 165 W.Va. 128, 267 S.E.2d 454 (1980)."

In the instant proceeding, there is no question that the appellant's delay in seeking legal redress will work an unjustifiable hardship on the appellee. With each passing year, the appellee provided child support for the children of his second wife, which monies could have been given to the appellant had she timely invoked her right to receive child support payments from the appellee. The doctrine of laches would appear to be appropriate in this case to prevent the appellant from seeking arrearage child support payments. However, in Syllabus Point 6 of *Robinson v. McKinney,* 189 W.Va. 459, 432 S.E.2d 543 (1993), we held that "[t]he ten-year statute of limitations set forth in W.Va. Code, 38-3-18 [1923] and not the doctrine of laches applies when enforcing a decretal judgment which orders the payment of monthly sums for alimony or child support." [5] *See, Korczyk v. Solonka,* 130 W.Va. 211, 218, 42 S.E.2d 814, 819 (1947); *Hudson v. Peck,* 183 W.Va. 300, 303, 395 S.E.2d 544, 547

---

5. "Matured installments provided for in a decree, which orders the payment of monthly sums for alimony and child support, stand as 'decretal judgment' against the party charged with the payments." Syllabus Point 1, *Goff v. Goff,* 177 W.Va. 742, 356 S.E.2d 496 (1987).

(1990). Therefore, in the absence of a showing that more than ten years elapsed since the last child support payment was due and owing, the appellant's claim may proceed.

 The parties in this litigation agreed to absolve the appellee of having to provide child support payments to the appellant on behalf of their two children. We noted in Syllabus Point 3, of *Wyatt v. Wyatt*, 185 W.Va. 472, 408 S.E.2d 51 (1991), "[t]he duty of a parent to support a child is a basic duty owed by the parent to the child, and a parent cannot waive or contract away the child's right to support." [6] The rule in *Wyatt*, while sound, does not quite fit the facts of the instant case. Part of the agreement the parties had which absolved the appellee of making child support payments to the appellant, called for a third party, Thomas Crouse, to provide child support for the children of the appellee and appellant. Although we have clearly stated in the past that parties to the divorce decree cannot, by an agreement, modify or terminate a decretal child support obligation,[7] we have in rare circumstances applied the doctrine of equitable estoppel in the context of child support modification.[8] For example, in *Kimble* the father and non-custodial parent, in exchange for termination of his child support obligations, consented to the adoption of his child. Thereafter, Mr. Kimble stopped paying child support, and about one year later, Mrs. Kimble petitioned for delinquent child support payments (the adoption had not occurred) and requested an increase in child support. In Syllabus Point 3 of *Kimble*, this Court held that:

"Where the welfare of the child has not been adversely affected, a custodial parent may be barred by the doctrine of equitable estoppel from seeking enforcement of the decretal obligation of a noncustodial parent who has executed formal consent to [the child's] adoption by the custodial parent and the custodial parent's current spouse in exchange for the release of that decretal obligation[,] if the adoption is not consummated to the detriment or disadvantage of the noncustodial parent due to inaction on the part of the custodial parent."

*See, Sutton v. Schwartz*, 808 S.W.2d 15, 19 (Mo.Ct.App.1991) (where the court held that equitable estoppel would be applied in a child support arrearage case when "it may be an injustice to permit an obligee to collect the full amount of child support due under a decree if the obligor changed position, to his or her prejudice, in reliance on a perceived agreement with the obligee."); *In re Marriage of Cook*, 223 Mont. 293, 299, 725 P.2d 562, 566 (1986) ("The courts are generally reluctant to state any general rule as to when an estoppel arises, but generally the equitable principle arises when the mother has expressly or impliedly consented to an arrangement other than the payment of the [child support] judgment."); *Harrison v. Smith*, 201 Neb. 21, 27–29, 265 N.W.2d 855, 859–60 (1978) (divorced wife, by securing written consent of divorced husband to adoption of their child by her then husband had equitably estopped herself from the right to further child support from and after the time

---

**6.** We hasten to point out that while the rule in *Wyatt* sets the tone of this Court's position against a parent being able to contract away his or her child support obligation, we are convinced by the record in this case that the children were not deprived of their right to financial support. We will also note in the strongest of terms that this Court does not approve of the arrangement made by the parties insofar as it involved the child support obligation of the appellee. Had the children, in fact, been named as parties in this matter, or had they still been minors, or if the record raised any question as to whether the children were harmed in any financial way by the agreement of the parties herein, our decision in this case may very well have been different.

**7.** *See*, Syllabus Point 2, *Kimble v. Kimble*, 176 W.Va. 45, 341 S.E.2d 420 (1986) (where we said

that "[a] decretal child support obligation may not be modified, suspended, or terminated by an agreement between the parties to the divorce decree.").

**8.** This Court has utilized the doctrine of equitable estoppel to enforce an agreement between parents with respect to child support in an analogous context. In *Grijalva v. Grijalva*, 172 W.Va. 676, 310 S.E.2d 193 (1983), this Court applied the doctrine of equitable estoppel to enforce a divorce settlement agreement adopted in a final divorce decree which prohibited subsequent court modification, and reversed a lower court's reduction in child support payable by a noncustodial father.

the adoption should have been completed); *Anderson v. Anderson*, 48 Ill.App.2d 140, 147, 198 N.E.2d 342, 346 (1964) (where it was held that "even in the absence of an enforceable agreement, we know of no reason why the. doctrine of equitable estoppel could not be applied as to all or part of the past installments in an appropriate case."). *Kimble* requires two issues be determined in deciding whether to apply the doctrine of equitable estoppel to arrearage child support: (1) will the welfare of the child be negatively affected, and (2) has there been detrimental reliance?

As to the question of whether the welfare of the children would be adversely affected by applying equitable estoppel to this case, we think not. The record indicates that both children are now emancipated, with the youngest child being emancipated through marriage. While the children were minors, they received financial support from Thomas Crouse, under an express agreement that such support was provided on behalf of the appellee. The record does not disclose that the children were ever deprived of their financial needs due to any default by Thomas Crouse in meeting such obligation. The children have not been named as parties in this matter. To the extent that the two children of the parties wish to assert any right they may have to past child support obligations by the appellee, they are presumptively capable of bringing an independent action against their father.

The second issue seeks to determine whether there has been detrimental reliance by the appellee. In Syllabus Point 2 of *Helmick v. Broll*, 150 W.Va. 285, 144 S.E.2d 779 (1965), we stated that "[i]t is essential to the application of the principles of equitable estoppel that the one claiming the benefit thereof establish that he relied, to his disadvantage or detriment, on the acts, conduct or representation of the one alleged to be estopped." The record in this case informs us that the appellee did, in fact, detrimentally rely upon the agreement between the parties. The appellee did not merely agree to

stop making child support payments to the appellant upon the marriage of the appellant to Thomas Crouse. The agreement called for the appellee to undertake the financial obligation and support of Thomas Crouse's three children, upon the appellee's marriage to Sharon Crouse. From November 17, 1989 up to the 1994 initiation of this case, the appellee provided child support for the three children of Thomas Crouse. During this same period, Thomas Crouse provided child support to the appellee's two children. Nowhere in the record is it indicated that Thomas Crouse failed to carry out his end of the agreement. What the appellant would have this Court do, and that which this Court will not do, is allow her to "double-dip." The appellant received child support for her two children from Thomas Crouse, with the express understanding that such support was being provided on behalf of appellee's obligation to her for the same. She now wants to receive the same money from the appellee—after their children have become emancipated—equity cries out that to permit this would be truly unjust. The appellant did not present a scintilla of evidence to show that she, in fact, incurred a financial loss or had to make financial sacrifices as a result of the appellee not providing child support payment to her. The record strongly suggests that Thomas Crouse ably maintained his end of the herein disavowed agreement and provided appellant's children with the level of financial support that was due and owing by the appellee. No hardship was shown to befall the appellant or her children. Without such evidence, this Court will not champion the cause of the appellant in this unseemly affair.

In Syllabus Point 2 of *Goff*, we stated that "[t]he authority of the circuit courts to modify alimony or child support awards is prospective only and, absent a showing of fraud or other judicially cognizable circumstance in procuring the original award, a circuit court is without authority to modify or cancel accrued alimony or child support installments." In affirming the trial court's decision in this case, we do not disturb the integrity and

soundness of *Goff*.[9] Nor do we depart from our position in Syllabus Point 7 of *Robinson*, wherein we stated that "[i]n order to ensure that the best interests of the child are considered, ordinarily an agreement to modify or terminate a child support obligation is effective only upon entry of a court order, authorized by W. Va.Code, 48–2–15 [1991], which modifies or terminates the child support obligation." The decision of the circuit court in this matter merely prevented the appellant from reaping an unearned windfall. The decision did not impede or impair any presumptive rights the children may have in arrearage child support payments from November 17, 1989 to the dates of their respective emancipation.

Judgment affirmed.

RECHT, Judge, sitting by temporary assignment.

---

9. In a letter drafted to counsels for the parties, the circuit court stated:
 I have reviewed the file in this matter and find that the finding of the family law master in this situation is contrary to the facts and application of the law because equity cries out to provide relief to Stephen Leo S[.].