473 S.E.2d 736

**Marshall COSTELLO, Administrator of the Estate of Donna F. McDonald Costello, Plaintiff Below, Appellant,**

v.

**Michael McDONALD, Defendant Below, Appellee.**

No. 22854.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 17, 1996.

Decided June 14, 1996.

McHUGH, Chief Justice.

The appellant, Marshall Costello, the administrator of the estate of Donna F. McDonald Costello, appeals the September 14, 1994 order of the Circuit Court of Jefferson County which denied, in part, his petition for review of the August 9, 1994 order. The circuit court found in both orders that the arrearage in child support still outstanding at the time of the death of the custodial parent, Donna F. McDonald Costello, is the property of the children rather than an asset of the estate of the deceased custodial parent. The appellee, Michael McDonald, is the parent who is allegedly in arrears on his child support payments. For reasons stated below, we reverse the September 14, 1994 order of the circuit court and remand this case to the circuit court for further proceedings consistent with this opinion.

I

On July 24, 1991, the circuit court entered an order granting Donna F. McDonald (hereinafter "Donna") and Michael McDonald (hereinafter "Michael") a divorce. The custody of the couple's two daughters was awarded to Donna, and Michael was ordered to pay Donna child support.

On April 16, 1993, the couple's oldest daughter married, and therefore, became emancipated. On January 18, 1994, Donna died intestate after giving birth to a son of whom Marshall L. Costello, her new husband, is the father. Shortly thereafter, the youngest daughter, who had been in the custody of Donna, was returned to the custody of Michael, her father.

In or around June of 1994, Michael filed a petition for modification of child support with the circuit court. Michael requested that his obligation to pay child support be terminated because he was now raising the youngest child. Michael noted in his petition that Marshall Costello wanted the money Michael owed Donna in child support.

The circuit court entered an order on August 9, 1994, which essentially adopted the recommended order of the family law master. More specifically, the circuit court found, *inter alia*, that the arrearage in child

Robert D. Aitcheson, Charles Town, Barbara H. Allen, Allen & Allen, L.C., Charleston, for Appellant.

Byron Craig Manford, Martinsburg, for Appellee.

Cynthia M. Steiner, Martinsburg, for Child Advocate Office.

support that Michael owed Donna, if there was any, belongs to the couple's two daughters and is to be divided equally between them. The circuit court further stated that the half going to the youngest daughter "is voided" because Michael, the obligor, who now has custody of the youngest daughter, would, in effect, be paying himself.

Marshall Costello petitioned the circuit court to review the August 9, 1994 order pursuant to *W. Va. R. Civ. P.* 60(b).[1] The circuit court responded by entering an order on September 14, 1994, in which it stated that the petition for review would be granted, in part. The circuit court reversed its earlier holding that the amount of arrearage owed to the youngest child was void and, instead, made clear that the arrearage is the property of the youngest child, and not the property of the custodial parent, Michael. The circuit court, however, declined to review that portion of the August 9, 1994 order which held that the arrearage in child support payments is the property of the children and not the property of the deceased custodial parent's estate. Thereafter, the circuit court remanded the case to the family law master in order to "(1) determine the amount of any actual arrearage prior to change of custody; (2) apportion the amount, if any, between the two children; (3) enforce the payment of any arrearage; and (4) to provide a mechanism for the payment of any arrearage owing to ... [the youngest child] to be deposited in her behalf either with the Child Advocate or in some depository."

## II

■ The issue on appeal is whether the arrearage in child support at the time of the death of the custodial parent is the property of the children of the deceased or an asset of the estate of the deceased. We acknowledge that this issue of first impression is difficult to resolve. Because the issue is a question of law our review is *de novo. See* syl. pt. 1, *Burnside v. Burnside,* 194 W.Va. 263, 460 S.E.2d 264 (1995).

The few cases addressing this issue have failed to articulate a policy which this Court could apply in all situations. For example, in *In re Estate of Antkowiak,* 95 Ohio App.3d 546, 642 N.E.2d 1154 (1994) the custodial parent, the mother, died testate on November 6, 1990, bequeathing her entire estate to her current husband. On June 9, 1991, the appellant, the custodial parent's son from a previous marriage, became emancipated. The appellant, as an adult, brought a declaratory judgment action seeking to have the child support arrearage collected by the Child Support Enforcement Agency declared his separate property rather than part of the decedent custodial parent's estate. *Id.*

The Court of Appeals of Ohio in *Antkowiak* declared that the child support arrearage goes to the emancipated child rather than to the deceased parent's estate. The Court of Appeals based its decision on the rationale that it is the child who suffers by the obligor's failure to pay the child support. However, the court stated that its holding was limited to an emancipated child seeking child support arrearage. Additionally, the court noted that if the custodial parent receives a judgment to collect the arrearage during his or her lifetime, then the judgment would become a part of the deceased custodial parent's estate. *Id.*

In *Lizak v. Schultz,* 496 N.E.2d 40 (Ind. 1986), the father was ordered to pay child support to the mother. The father was frequently in arrears. The mother eventually remarried, and her new husband adopted the two youngest children of her former husband. Less than three months later the mother died.

The mother's new husband, in his capacity as the mother's personal representative, petitioned to pursue child support arrearage. The Supreme Court of Indiana held that the administrator of the estate of the deceased custodian has standing to bring an action to collect child support arrearage owed to the deceased custodial parent. The rationale was that the custodial parent had advanced her own funds to care for the child and is,

---

1. *W. Va. R. Civ. P.* 60(b) allows a party on motion to ask a court to relieve him or her from a final judgment order for, *inter alia,* mistake, inadver-tence, surprise, excusable neglect or unavoidable cause.

therefore, entitled to collect the arrears from the non-custodial parent.

Similarly, in *Landry v. Landry*, 516 So.2d 217 (La.Ct.App.1987) the custodial parent, the mother, died with the noncustodial parent, the father, in arrears on child support payments. After the mother's death the child went to live with the father.

The administrator of the mother's estate sought to collect the child support arrearage for the estate. The Court of Appeal of Louisiana held: "A custodial parent has the right to enforce an obligation for past due support. That right does not abate upon death.... The succession representative is the proper party, and the only party, to enforce that right." *Id.* at 219 (citations omitted).

In *In re Marriage of McCann*, 27 Cal. App.4th 102, 32 Cal.Rptr.2d 639 (1994), the issue before the Court of Appeal of California was whether "the district attorney may bring an action on behalf of the children for whose benefit the support was ordered to recover arrearages accruing after the custodial parent's death." *Id.* 32 Cal.Rptr.2d at 640. The court held that the district attorney could bring an action. In so holding, the court stated *"[b]ecause the arrearages in the present case accrued after the custodial parent's death,* the presumption that the action has been brought to reimburse the custodial parent for having supported the children has no application. Under the unique circumstances of this case, the children must be deemed to be the beneficiaries of the arrearages; otherwise the death of the custodial parent would render the [child support] order unenforceable." *Id.* 32 Cal.Rptr.2d at 642 (emphasis added).

Although the discussion above fails to provide a bright line rule which resolves the issue, two analyses emerge. The first analysis is to hold that the child support arrearage is the property of the deceased custodial parent's estate because the money is owed from the obligor (the person who is ordered to pay child support) to the obligee (the adult person who receives the child support payment). *In re Estate of Antkowiak*, 642 N.E.2d at 1156. After all, "[i]t is presumed that when the obligor fails to make his support payments as ordered, the obligee or

some public agency must assume that additional burden.... When this happens, the party who assumed that burden is entitled to recoup that payment from the obligated party." *Id.* 642 N.E.2d at 1156 (citation omitted).

The second analysis is to focus on the nature and purpose of the child support. As the Court of Appeals of Ohio has noted,

> while it may be valid to presume that the custodial parent steps in to provide the necessities for the child when a support obligor defaults, it is specious to assume that the custodial parent has the capacity to fully satisfy the deficiency to the extent that the child enjoys the standard of living he or she would have had if the marriage had not ended. It is the child, then, who has suffered by the obligor's failure to pay. Therefore, ... it is then the child to whom arrearages collected after his emancipation are owed, not his mother's estate.

*Id.* 642 N.E.2d at 1156.

Both analyses are reasonable. Although we have no case law directly on point, we have cases which would support either analysis. For instance, in *Korczyk v. Solonka*, 130 W.Va. 211, 42 S.E.2d 814 (1947) the custodial parent, the mother, sought to subject the real and personal property of the noncustodial parent to the satisfaction of a decretal judgment for child support arrearage which had been rendered when the parties' four children were all minors. When the mother brought this action, all of the children were emancipated. One of the issues before this Court was whether the custodial parent could maintain a suit on behalf of herself and her children, or whether the children should have been joined as party plaintiffs. This Court held that because the child support arrearage was decreed to the custodial parent, the children had no interest in the result of the current litigation and, therefore, did not need to be joined as plaintiffs. *See also Lauderback v. Wadsworth*, 187 W.Va. 104, 107 n. 5, 416 S.E.2d 62, 65 n. 5 (1992) (In dicta this Court stated that a father could not reduce the child support arrearage he owed by making payments directly to his children because the father's obligation to pay child support

can only be satisfied by making payments to the mother). However, in *Kimble v. Kimble,* 176 W.Va. 45, 341 S.E.2d 420 (1986) this Court cited to many cases which concluded that child support is a right which belongs to the child.

This Court cannot predict all of the situations which could arise when the obligee parent dies with the obligor parent being in arrears on his or her child support payments. Generally, our laws governing child support payments are premised on the noncustodial parent, the obligor, making the payments to the custodial parent, the obligee, who ensures that the money is spent for the welfare of the child. *See W. Va. Code,* 48A–2–24 [1995] (When discussing how child support arrearage collected pursuant to the "Enforcement of Family Obligation" chapter of the *Code* should be disbursed, this *Code* section states that the monies collected from the obligor, the person owing the arrearage, should go to the obligee, the individual to whom a duty of support is owed). Child support payments are not paid directly to the child, but are, instead, entrusted to an adult individual for the benefit of the child. It is for this reason that we conclude that the following presumption, which we have previously mentioned, is the more sound principle to follow: "It is presumed that when the obligor fails to make his support payments as ordered, the obligee or some public agency must assume that additional burden.... When this happens, the party who assumed

that burden is entitled to recoup that payment from the obligated party." *In re Estate of Antkowiak,* 642 N.E.2d at 1156. Indeed, the West Virginia Department of Health and Human Resources (hereinafter the "WVDHHR") is to be reimbursed for assistance payments made to the family once the child support enforcement division collects the child support owed. *See W. Va. Code,* 48A–2–24 [1995]. Although the more sound approach is to presume the obligee assumed the additional burden when the obligor fails to make his or her child support payments, this presumption should not be applied in a manner which ignores the fact that the purpose of child support is to protect the welfare of the child.

Therefore, we hold that for social convenience and the administration of justice there should be a presumption that when the obligor fails to make his or her child support payments as ordered, the obligee assumed that additional burden in such a manner as to protect the welfare of the child, and his or her estate is, therefore, entitled to recoup the child support arrearage which accrued prior to the death of the obligee.[2] However, this presumption may be rebutted if there is clear, cogent, and convincing evidence that the welfare of the child for whom the child support payments were collected, would be adversely affected if the child support arrearage is given to the obligee's estate.[3] Whether the presumption has been rebutted is within the sound discretion of the court and

**2.** There are numerous reasons for creating a presumption. *See* 1 Jack B. Weinstein, et al., *Weinstein's Evidence* ¶ 300[02] at 300–7 to 300–8 (1996). The above presumption may be justified on at least two grounds. First, the presumption is in accord with existing law. For instance, if the obligee had not died, then the obligee, rather than the children, may seek to collect the child support arrearage from the obligor. *See Korczyk, supra.* Second, it prevents a legal impasse. Because there is no law in West Virginia which directly addresses the issue before us, there needs to be a mechanism in place which balances the obligee's right to be reimbursed for those funds he or she has expended to care for the children in place of the child support payments which have not been made and the children's rights to receive the basic necessities of life.

Moreover, we note that like the *Whiting* presumption (relating to gift to marital estate in an equitable distribution determination) which we

discussed in *Burnside,* this presumption is created for resolution by the family law master and circuit court; therefore, as such, "the problems of jury instructions are avoided. *See Sanderlin v. Martin,* 373 F.2d 447, 448 (4th Cir.1967) (Haynsworth, C. J., dissenting) ('use of the word "presumption" in a [jury] charge is so likely to carry with it an implication of artificial evidentiary value that it ought to be avoided')." *Burnside,* 194 W.Va. at 269 n. 10, 460 S.E.2d at 270 n. 10.

**3.** Like *Burnside, supra,* the above presumption is one of fact and not one of law. *See Burnside,* 194 W.Va. at 269 n. 11, 460 S.E.2d at 270 n. 11. A presumption of fact has also been called an inference. *See* 1 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers,* § 3–1(B)(3) (3d ed. 1994). *See also* 2 McCormick on *Evidence,* § 342 at 450–51 n. 9 (John William Strong ed., 4th ed., Practitioner Treatise Series 1992). Additionally, we do not demand the obligee to officially account for how funds are expended on the child. Instead, we assume the

will have to be determined on a case-by-case basis. *See Burnside,* 194 W.Va. at 269, 460 S.E.2d at 270.

■ The court in exercising its discretion to determine whether the presumption has been rebutted should be mindful that generally, the child should have been provided with the necessities in order for his or her welfare to be protected. *See generally* 59 Am.Jur.2d *Parent and Child* § 44 (1987). The necessities include suitable shelter, food, clothing, medical attention, education, and maintenance in the station of life that the child is accustomed to living. *See W. Va. Code,* 48A–1–2 [1986] ("[T]he laws of this state should encourage and require a child's parents to meet the obligation of providing that child with adequate food, shelter, clothing, education, and health and child care."); *Wyatt v. Wyatt,* 185 W.Va. 472, 475, 408 S.E.2d 51, 54 (1991). *See also People v. Pierson,* 176 N.Y. 201, 68 N.E. 243, 244 (1903); *Esteb v. Esteb,* 138 Wash. 174, 244 P. 264, 265 (1926), opinion supplemented on re-hearing on other grounds by 138 Wash. 174, 246 P. 27, 59 Am.Jur.2d *Parent and Child* § 44 (1987). *Cf. Snyder v. Lane,* 135 W.Va. 887, 895, 65 S.E.2d 483, 487 (1951) (When discussing the husband's duty to provide maintenance or support to his wife, this Court noted that this duty means providing for the necessities of life which include food, clothing, shelter, and medical attention). We also have held that if a child is incapable of supporting himself because of physical or emotional disabilities, then the parents must support the child beyond the age of majority. *See Casdorph v. Casdorph,* 194 W.Va. 490, 460 S.E.2d 736 (1995). Therefore, for some children parental support in adulthood is a necessity.

■ If there is clear, cogent, and convincing evidence presented to the court that the obligor's failure to pay the child support award as ordered so deprived the child of the necessities of life so as to adversely affect his or her welfare, then the court should award the amount of arrearage to the child which will ensure that he or she has suitable shelter, food, clothing, medical attention, education, and maintenance in the station of life that he or she is accustomed to living. Furthermore, when the child is emancipated or has attained the age of majority[4] when the obligee dies and if there is clear, cogent and convincing evidence that the obligor's failure to pay the child support award as ordered so deprived the emancipated child or the child who has attained the age of majority of the necessities of life when he or she was a child so as to adversely affect his or her welfare, then the court should award the amount of arrearage to the emancipated child or the child who has attained the age of majority so as to put him or her in the position he or she would have been had the child support been timely paid. The discretion the court has in making this determination is not any different than the discretion the court statutorily has when determining whether the child support guidelines are applicable. *See W. Va. Code,* 48A–2–8 [1993]. More specifically, in *W. Va.Code,* 48A–2–8 [1993] there is a rebuttable presumption that the amount of child support determined by the child support guidelines is the correct amount. However, this presumption may be rebutted if the family law master or circuit court makes a written finding on the record that the application of the guidelines would be contrary to the best interests of the child. *Id.*[5] *See also* syl. pt. 5, *Phillips v. Phillips,* 188 W.Va. 692, 425 S.E.2d 834 (1992).

■ Likewise, in the case before us, the presumption that the obligee expended his or her funds to cover for the child support

---

obligee will spend the funds in a manner that is in the best welfare of the child. Therefore, a heightened standard of proof to rebut this assumption is warranted.

4. In West Virginia the age of majority is eighteen. *See W. Va.Code,* 2–2–10(aa) [1989] and *W. Va.Code,* 2–3–1 [1974]. *See also Anderson v. Moulder,* 183 W.Va. 77, 83 n. 8, 394 S.E.2d 61, 67 n. 8 (1990).

5. *W. Va.Code,* 48A–2–8 [1993] specifically states, in relevant part:

There shall be a rebuttable presumption, in any proceeding before a family law master or circuit court judge for the award of child support, that the amount of the award which would result from the application of such guidelines is the correct amount of child support to be awarded. A written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case shall be sufficient to rebut the presumption in that case. The guidelines shall not be followed:

. . . .

payments not made by the obligor in order to protect the welfare of the child may be rebutted if the family law master or circuit court makes a written finding on the record that the application of this presumption would harm the welfare of the child. We caution, however, that the mechanism set forth in this opinion does not apply when the WVDHHR is seeking reimbursement pursuant to *W. Va.Code*, 48A–2–24 [1995] for those funds given to the obligee by the WVDHHR during the time period when the obligor failed to make the ordered child support payments.

■ Accordingly, we hold it is presumed that when the obligor fails to make his or her child support payments as ordered, the obligee assumed that additional burden in such a manner so as to protect the welfare of the child, and, therefore, in the event the obligee dies, his or her estate is entitled to recoup from the obligated party the child support arrearage which accrued prior to the death of the obligee. This presumption may be rebutted if the court makes written findings on the record that there is clear, cogent, and convincing evidence that the welfare of the child for whom the child support payments were ordered, was adversely affected or would be adversely affected if the child support arrearage is given to the obligee's estate. Whether the presumption has been rebutted is within the sound discretion of the court and will have to be determined on a case-by-case basis. If the presumption is rebutted, then the court must determine the amount of child support arrearage which should be given to the child in order to ensure that the child has suitable shelter, food, clothing, medical attention, education, and maintenance in the station of life he or she is accustomed to living. If, however, the child becomes emancipated or reaches the age of majority, then the court must determine the amount of child support arrearage which should be awarded in order to ensure that the emancipated child or the child who has attained the age of majority is put in the same position as he or she would have been had the child support been timely

paid. Furthermore, if a minor child is involved, then the court must outline a procedure whereby it is ensured that the minor child receives the benefits of the child support arrearage.

In the case before us, neither the family law master nor circuit court had the benefit of the above presumption. Therefore, neither of them made written findings on the record which indicate that the application of the above presumption would harm the welfare of the children. Accordingly, we reverse the September 14, 1994 order of the circuit court and remand this case to the circuit court for further proceedings consistent with this opinion.

Reversed and remanded.

---

(2) When the child support award proposed to be made pursuant to the guidelines would be contrary to the best interests of the child or children, or contrary to the best interests of the parties.

In 1995 the legislature substantially rewrote article 2 of chapter 48A. That portion of *W. Va.Code*, 48A–2–8 which we quote above has remained substantially unchanged, but is now found in *W. Va.Code*, 48A–2–17 [1995]. Thus, it is clear that the family law master and circuit court is accustomed to determining whether the child support received by the children is contrary to their best interest.