IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2022 Term

**FILED**

**April 28, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 21-0180

In re K.S.

Appeal from the Circuit Court of Monongalia County
The Honorable Cindy S. Scott, Judge
Civil Action No. 19-JA-31

AFFIRMED

Submitted: February 16, 2022
Filed: April 28, 2022

P. Todd Phillips, Esq.
Lyons Phillips Legal Group PLLC
Morgantown, West Virginia
Counsel for Petitioner G.H.

Cheryl L. Warman, Esq.
Morgantown, West Virginia
Counsel for Respondent S.S.

Patrick Morrisey, Esq.
Attorney General
Lee Niezgoda, Esq.
Assistant Attorney General
Fairmont, West Virginia
Counsel for Respondent DHHR

Stephanie Nethken, Esq.
Westover, West Virginia
Guardian ad litem

JUSTICE WALKER delivered the Opinion of the Court.

JUSTICE BUNN did not participate in the decision of this case.

SYLLABUS BY THE COURT

1.  "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syllabus Point 1, *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

2.  "The duty of a parent to support a child is a basic duty owed by the parent to the child[.]" Syllabus Point 3, in part, *Wyatt v. Wyatt*, 185 W. Va. 472, 408 S.E.2d 51 (1991).

3.  "The authority of the circuit courts to modify alimony or child support awards is prospective only and, absent a showing of fraud or other judicially cognizable circumstance in procuring the original award, a circuit court is without authority to modify

i

or cancel accrued alimony or child support installments." Syllabus Point 2, *Goff v. Goff*, 177 W. Va. 742, 356 S.E.2d 496 (1987).

4.     "'A circuit court lacks the power to alter or cancel accrued installments for child support.' Syl. pt. 2, *Horton v. Horton*, 164 W. Va. 358, 264 S.E.2d 160 (1980)." Syllabus Point 4, *Robinson v. McKinney*, 189 W. Va. 459, 432 S.E.2d 543 (1993).

5.     "Matured installments provided for in a decree, which orders the payment of monthly sums for alimony or child support, stand as 'decretal judgments' against the party charged with the payments." Syllabus Point 1, *Goff v. Goff*, 177 W. Va. 742, 356 S.E.2d 496 (1987).

6.     "'[W]here the parties . . . simply cohabit, the preexisting [child support] order does not automatically terminate, but remains in full effect, and the child support obligation continues as defined in the order.' Syllabus Point 1, in part, *Griffis v. Griffis*, 202 W. Va. 203, 503 S.E.2d 516 (1998)." Syllabus Point 3, *Dalton v. Dalton*, 207 W. Va. 551, 534 S.E.2d 747 (2000).

7.     "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syllabus Point 5, *State v. General*

*Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959).

WALKER, Justice:

Shortly after K.S. was born in 2009, her parents split up and her father, Petitioner G.H., was ordered to pay her mother, S.S., $248 per month in child support.[1] Ten years later, K.S. was placed in Petitioner's custody after she was removed from S.S.'s home because of a child abuse and neglect petition. The circuit court suspended Petitioner's child support obligation when he took custody of K.S., but he owed nearly $25,000 in past unpaid child support and interest. Claiming that paying the past due child support would be a burden on his family's finances and contrary to the best interest of K.S., Petitioner filed a motion to discharge the child support arrearage. The circuit court denied the motion, finding that it was prohibited from retroactively modifying or canceling child support awards, except in limited circumstances not present here.

On appeal, Petitioner urges this Court to create an exception permitting a court to cancel accrued child support owed by a custodial parent to a person whose parental rights have been terminated, as eventually happened to S.S. Respondent Department of Health and Human Resources (DHHR), the child's mother, and the child's guardian ad litem support the circuit court's order. Because West Virginia Code § 48-1-205 (2015)

---

[1] As in all cases involving sensitive facts and minor children, we use initials to identify the parties. *See State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

1

plainly provides that "a child support order may not be retroactively modified so as to cancel or alter accrued installments of support[,]" we affirm the circuit court's order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

K.S.'s parents, who never married, separated a few months after she was born in 2009. The DHHR's Bureau for Child Support Enforcement (BCSE) started providing services to the child's mother and filed an action in the Family Court of Monongalia County to establish Petitioner's child support obligation.[2] In 2009, the family court ordered Petitioner to pay the mother $248 a month in child support. Petitioner did not appeal this ruling.

In February 2019, the DHHR filed a petition in the Circuit Court of Monongalia County alleging that K.S.'s mother was an abusive and neglectful parent as a result of her substance abuse.[3] Because no allegations were made against Petitioner,[4] the

---

[2] *See* W. Va. Code § 48-14-105 (2015), in part (providing that the BCSE, on behalf of the State, may bring an action to establish a child support order when the DHHR "is providing assistance on behalf of the child or the person to whom a duty of support is owed, in the form of temporary assistance to needy families or medical assistance[.]").

[3] The petition included K.S.'s half siblings, B.M. and O.S. The DHHR alleged that the child's mother tested positive for methamphetamines in January 2019. The DHHR did not allege that the mother failed to provide her children with appropriate food, clothing, or shelter.

[4] In its order, the circuit court listed the child's mother as an "Adult Respondent" and Petitioner as an "Interested Party," even though he met the statutory definition of Respondent. *See* W. Va. Code § 49-1-201 (2015) (defining Respondent as "all parents, (continued . . .)

2

child was placed in his custody and the circuit court suspended Petitioner's child support obligation, effective when the child's custody changed. But Petitioner still owed nearly $25,000 for unpaid child support including interest.

The child's mother stipulated to the allegations in the petition, she was adjudicated, and granted an improvement period. While these proceedings were pending, she filed a petition for contempt in family court seeking to enforce the 2009 child support order. The family court conducted a hearing on her motion and issued a Contempt and Judgment Order on July 8, 2019.[5] The family court noted that the custodial and decision-making responsibility for the child was governed by the order entered by the circuit court in the child abuse and neglect proceeding, and held that Petitioner "has a child support arrearage in the amount of $24,938.65 through January 31, 2019." But it did not distinguish how much Petitioner owed to the child's mother and the BCSE, respectively. Petitioner did not appeal the family court's order.

As the abuse and neglect matter moved toward disposition, in May 2020 Petitioner filed a motion to discharge the child support arrearage he owed to the mother. He did not seek to discharge the arrearage owed to the BCSE. According to Petitioner's

---

guardians, and custodians identified in the child abuse and neglect petition who are not petitioners or co-petitioners.").

[5] The copy of the order that is in the appendix record is nearly illegible. The order states that the mother appeared for the hearing, but there is no appearance listed for Petitioner or the BCSE.

motion, he claimed that he owed the mother $9,711.78 in principal and $5,521.07 in interest as of June 8, 2020. In his affidavit attached to the motion, Petitioner stated, in part:

> I paid support to [the mother] for a time, but stopped when I learned that [she] was buying drugs with the child support money delivered to her through BCSE. [The mother] was living with her mother and had few, if any, expenses. The child support payments provided [the mother] with extra money to spend on illegal substances. I purchased items, such as clothes, diapers, diaper wipes and formula and delivered these to [the mother] to assist her in caring for my daughter.
>
> [The mother] and I reunited three more times before this action commenced in February 2019. In all, [K.S.], [the mother] and I lived together on four occasions, for a total of 2-3 years before February 2019. At these times, I worked full-time and provided all, or nearly all of [K.S.]'s financial support. [The mother] had no steady employment during this time. She was either unemployed or worked an occasional house-cleaning job. . . .
>
> [The mother]'s lack of employment remained at times when I was not living with [K.S.] and [her] prior to the institution of this action. [The mother] lived with [S.M.] during a large portion of this time, and I believe that [he] likely supported [K.S.]'s needs when he and his son, [B.M.], were living with [K.S.] and [the mother].

Petitioner also stated by affidavit that in addition to having sole custody of K.S. since February 2019, he also shared custody of his daughter, E.H., and supported his fiancé who was about to give birth to his child. Petitioner stated that if he were required to pay past due child support to K.S.'s mother, it "would create a burden on our family's finances and would be adverse to [K.S.]'s interest. [She] would be deprived of the

4

resources she needs if I were required to make arrearage payments to" the mother. The circuit court ordered briefing on this motion.

At the disposition hearing, the circuit court involuntarily terminated the mother's parental rights.[6] In its December 2019 order, the circuit court found that the mother had failed to remedy her substance abuse and there was no reasonable likelihood that she could correct the conditions of abuse and neglect.

In November 2020, the circuit court held a hearing on Petitioner's motion to discharge the child support arrearage owed to the mother.[7] Petitioner acknowledged that a child support arrearage is generally not dischargeable but claimed this was an unusual case where an arrearage is owed by a custodial parent of a child to an individual whose parental rights were terminated. Petitioner argued that the most analogous case was *Costello v. McDonald*,[8] where this Court was asked to determine whether child support arrearage at the time of the death of the parent owed the funds should be recoverable as an asset of her

---

[6] *See* W. Va. Code § 49-4-604(6) (2020), in part ("Upon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child, terminate the parental, custodial and guardianship rights and responsibilities of the abusing parent and commit the child to the permanent sole custody of the nonabusing parent[.]").

[7] The court heard arguments on the motion; no party presented testimony.

[8] 196 W. Va. 450, 473 S.E.2d 736 (1996).

estate.[9] Petitioner argued that since the mother's parental rights to the child had been terminated, she was in a similar situation to that of a deceased parent. Petitioner claimed that he could overcome the rebuttable presumption created by *Costello*[10]—that the mother had expended additional money in caring for the child in light of his failure to pay child support—because he provided the mother with necessities for the child. Petitioner also argued that ordering him to pay the past due child support to the mother now created an absurdity because she would be obligated to return it to him—as an offset—since the child was now in his custody and she would presumably owe him child support although the circuit court had not yet ordered it. Petitioner offered alternatives, such as paying the

---

[9] *Id*. at 452, 473 S.E.2d at 738.

[10] *See* Syl., *Costello* ("It is presumed that when the obligor fails to make his or her child support payments as ordered, the obligee assumed that additional burden in such a manner so as to protect the welfare of the child, and, therefore, in the event the obligee dies, his or her estate is entitled to recoup from the obligated party the child support arrearage which accrued prior to the death of the obligee. This presumption may be rebutted if the court makes written findings on the record that there is clear, cogent, and convincing evidence that the welfare of the child for whom the child support payments were ordered, was adversely affected or would be adversely affected if the child support arrearage is given to the obligee's estate. Whether the presumption has been rebutted is within the sound discretion of the court and will have to be determined on a case-by-case basis. If the presumption is rebutted, then the court must determine the amount of child support arrearage which should be given to the child in order to ensure that the child has suitable shelter, food, clothing, medical attention, education, and maintenance in the station of life he or she is accustomed to living. If, however, the child becomes emancipated or reaches the age of majority, then the court must determine the amount of child support arrearage which should be awarded in order to ensure that the emancipated child or the child who has attained the age of majority is put in the same position as he or she would have been had the child support been timely paid. Furthermore, if a minor child is involved, then the court must outline a procedure whereby it is ensured that the minor child receives the benefits of the child support arrearage.").

6

arrearage into a college fund for the child to ensure that she got the benefit of the child support.

The mother argued against Petitioner's attempt to liken her to a deceased parent. She also noted that the family court entered a decretal judgment against Petitioner and he failed to appeal that order. Petitioner responded that the family court lacked jurisdiction to rule on the child support issue because the abuse and neglect proceeding was in circuit court. The mother replied that the law is clear that a child support order cannot be retroactively modified or canceled. The guardian for the child agreed that the mother was owed the arrearage for the time the child was in her custody and suggested that the circuit court order the mother to pay Petitioner child support for the time the child had been in his custody, beginning February 2019.

The circuit court denied Petitioner's motion, finding that it was prohibited from retroactively modifying the support order entered by the family court except in the case of fraud or other circumstance involved in the procurement of the award, which was not present here. The circuit court concluded that this case was not analogous to *Costello*. It stated that had Petitioner requested child support during the proceedings, he could have

offset his arrearage. The circuit court entered its order denying Petitioner's motion on February 19, 2021.[11]

After his motion was denied, Petitioner filed a motion seeking child support from K.S.'s mother. The circuit court held a hearing on the matter and ordered the mother to pay $248 in monthly child support to Petitioner, effective February 1, 2021.

## II. STANDARD OF REVIEW

In a child abuse and neglect case, we give deference to the circuit court's factual findings and conduct an independent review of questions of law:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a

---

[11] In its order, the circuit court did not address Petitioner's contention that the family court lacked jurisdiction to enter its July 8, 2019, Contempt and Judgment Order. Petitioner did not raise this issue as an assignment of error.

8

finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.[12]

With this standard in mind, we consider the parties' arguments.

### III. ANALYSIS

The issues presented in this child abuse and neglect matter are largely governed by Chapter 48 of the West Virginia Code, which confers authority to the courts to establish and enforce a parent's child support obligation. Our Legislature has stated that one of the goals of this legislation is to "improve opportunities for children."[13] This Court has recognized that "[t]he duty of a parent to support a child is a basic duty owed by the parent to the child[.]"[14] And as early as 1974, the federal government took steps to "staunch the hemorrhage of welfare payments made through the Aid to Families With Dependent Children (AFDC) program to primarily poor female heads of household and their children receiving either no, or inadequate, child support from their fathers[,]"[15] when

---

[12] Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

[13] W. Va. Code § 48-11-101 (2001), in part.

[14] Syl. Pt. 3, in part, *Wyatt v. Wyatt*, 185 W. Va. 472, 408 S.E.2d 51 (1991).

[15] *Williams v. Patton*, 821 S.W.2d 141, 151 (Tex. 1991).

9

Congress enacted Title IV–D of the Social Security Act as a way to strengthen child support enforcement efforts by the states.[16]

In compliance with federal law, West Virginia Code § 48-1-204 provides that "a child support order may not be retroactively modified so as to cancel or alter accrued installments of support."[17] This directive applies equally to Chapter 49 abuse and neglect proceedings.[18] This Court has recognized narrow exceptions to this rule, including fraud in procuring the award:

> The authority of the circuit courts to modify alimony or child support awards is prospective only and, absent a showing of fraud or other judicially cognizable circumstance in procuring the original award, a circuit court is without authority to modify or cancel accrued alimony or child support installments.[19]

---

[16] *See* 42 U.S.C. §§ 651-65 (1988).

[17] *See* 42 U.S.C. § 666 (1988) (providing that "each State must have in effect laws requiring . . . that any payment or installment of support under any child support order . . . is . . . not subject to retroactive modification[.]").

[18] *See* W. Va. Code § 49-4-801(b) (2015) ("This article shall be construed to be consistent with articles one, eleven, twelve, thirteen, fourteen, fifteen, sixteen, eighteen, nineteen and twenty four of chapter forty-eight of this code, and those articles apply to actions pursuant to this chapter unless expressly stated otherwise.").

[19] Syl. Pt. 2, *Goff v. Goff*, 177 W. Va. 742, 356 S.E.2d 496 (1987).

Petitioner faces a daunting hurdle in seeking to cancel his obligation to pay the child's mother past-due child support. He concedes there is no evidence of fraud or other judicially-recognized exception that would allow the circuit court to modify the 2009 child support award retroactively. It is undisputed that Petitioner made few payments toward his support obligation, his support obligation was never modified, and he owes the mother a sizeable arrearage. Petitioner also seeks an outright cancelation of his obligation to the mother when this Court has held that "[a] circuit court lacks the power to alter or cancel accrued installments for child support."[20] Even so, Petitioner argues that the circuit court erred in denying his motion. He claims that the circuit court disregarded the best interest of the child intended to benefit from the child support, the controlling standard in a child abuse and neglect proceeding.[21]

Petitioner urges this Court to craft an exception in the unique case where child support arrearage is owed by the now-custodial parent of a minor child to an individual whose parental rights were involuntarily terminated.[22] He states that the circuit

---

[20] Syl. Pt. 4, *Robinson v. McKinney*, 189 W. Va. 459, 432 S.E.2d 543 (1993) (quoting Syl. pt. 2, *Horton v. Horton*, 164 W. Va. 358, 264 S.E.2d 160 (1980)).

[21] *See* Syl. Pt. 3, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children.").

[22] Petitioner's brief does not comply with Rule 10(c) of the West Virginia Rules of Appellate Procedure. He identifies three assignments of error but does not provide separate, distinct contentions corresponding to each of them in the argument section of his (continued . . .)

court's order "cannot be seen as anything other than a net loss in opportunities" for the child. Petitioner notes that this Court has made exceptions to the general rule prohibiting retroactive modification of a child support order, but those cases are in no way similar to the facts of this case.[23]

Likewise, Petitioner's attempt to equate this case to *Costello* is unpersuasive. *Costello* is distinguishable for the obvious reason that one cannot make child support payments to a person who is deceased. Because an estate is not listed in the statutory definition of obligee[24]—an individual to whom a duty of support is owed—and the few

brief. Instead, there are four subheadings in the discussion section of his brief that do not correspond to his three assignments of error. As this Court stated in *Metro Tristate, Inc. v. Public Service Commission of West Virginia*, 245 W. Va. 495, __, 859 S.E.2d 438, 444 (2021), this presents a challenge for both this Court and the other parties to understand the connection between the errors initially alleged and the various contentions made later. The other parties provided a single argument in their response briefs.

[23] *See e.g.*, *Supcoe v. Shearer*, 204 W. Va. 326, 512 S.E.2d 583 (1998) (stating circuit court did not abuse its discretion by allowing retroactive modification of child support to reflect the date the child's custody changed); *Kimble v. Kimble*, 176 W. Va. 45, 341 S.E.2d (1986) (holding that a custodial parent may be barred by the principle of equitable estoppel from seeking enforcement of child support arrearage when the noncustodial parent executed a formal consent for the child's adoption in exchange for the release of that decretal obligation).

[24] *See* W. Va. Code § 48-1-234, in part (defining the term "obligee" to include "(1) An individual to whom a duty of support is or is alleged to be owed or in whose favor a support order has been issued or a judgment determining parentage has been rendered; (2) A state or political subdivision to which the rights under a duty of support or support order have been assigned or which has independent claims based on financial assistance provided to an individual obligee[.]"). In contrast, the term "obligor" includes the estate of a decedent who owed a duty of child support. *See* W. Va. Code § 48-1-235 (defining the term "obligor" as "an individual or the estate of a decedent: (1) Who owes or is alleged to (continued . . .)

cases addressing the issue "failed to articulate a policy which this Court could apply in all situations[,]"[25] this Court established factors in *Costello* to determine who could collect the arrearage—the children or the decedent's estate. In either event, the arrearage was not forgiven.[26]

The DHHR, the mother, and the guardian respond that the circuit court correctly found that it lacked the authority to discharge Petitioner's child support obligation. They state that Petitioner's arrearage is payable for the time that the mother had custody of the child and cared for her without his help, due to his failure to pay child support. They also note that the DHHR made no allegation that the mother failed to properly provide the child with food, shelter, clothing, or other necessities. The mother further states that Petitioner's "newly-minted concern with equity and his daughter's best

---

owe a duty of support; (2) Who is alleged, but has not been adjudicated, to be a parent of a child; or (3) Who is liable under a support order.").

[25] 196 W. Va. at 452, 473 S.E.2d at 738.

[26] The circuit court rejected Petitioner's suggestion that he place the arrearage owed to the child's mother into a college fund for the child, but he did not raise this issue as an assignment of error. The guardian advances no argument that K.S. has the right to collect the arrearage now that her mother's parental rights were terminated. So, because the issue is not squarely before us, we leave for another day the issue of whether a child can prevail on a claim to receive a child support arrearage owed to her custodial parent when that parent neglected to meet her basic needs.

interest seems disingenuous and hypocritical in light of his extensive period of willfully depriving" her of child support.

In syllabus point 1 of *Goff*,[27] we recognized that "[m]atured installments provided for in a decree, which orders the payment of monthly sums for alimony or child support, stand as 'decretal judgments' against the party charged with the payments." In general, child support that is due but remains unpaid becomes a judgment for money that accrues interest,[28] subject to a ten-year statute of limitations.[29]

We agree with Petitioner that the right to child support lies exclusively with the child and a custodial parent holds the support payments in trust for the child's benefit.[30] But Petitioner fails to make the distinction between present child support and an arrearage. "Established precedent clarifies that, with some limited exceptions, the child support arrearage is typically considered a debt owed to the custodial parent for the amounts

---

[27] 177 W. Va. 742, 356 S.E.2d 496; *see also* W. Va. Code § 48-1-204.

[28] *See* Syl. Pt. 5, *Goff*, 177 W. Va. 742, 356 S.E.2d 496 ("Mature alimony and child support installments are judgments for money which accrue statutory interest from the date the payments are due.").

[29] *See* Syl. Pt. 6, *Robinson*, 189 W. Va. at 459, 432 S.E.2d at 543 ("The ten-year statute of limitations set forth in *W. Va. Code*, 38-3-18 [1923] and not the doctrine of laches applies when enforcing a decretal judgment which orders the payment of monthly sums for alimony or child support.").

[30] *Kimble*, 176 W. Va. at 49, 341 S.E.2d at 424.

14

advanced to make up the non-custodial parent's financial shortfall in raising the children."[31]   Unlike present child support payments, which are obligations of the noncustodial parent to the child, the past due child support at issue here is owed to the mother as a debt—reimbursement for the funds she expended when the child was in her custody.   Where a custodial parent "has in effect discharged the liability of the trust i.e., the accrued unpaid child support obligation by actually supporting a child over a period in which a judgment has accrued, that judgment would, it appears, accrue not to the child but to the supporting parent."[32]   Even if the mother relied on her family members or the father(s) of her other two children to financially support K.S., this does not excuse Petitioner's debt to her.   The mother's household absorbed Petitioner's share of the costs associated with caring for the child when it had to fill the void that Petitioner created by shirking his parental responsibilities.

Petitioner also claims that after his child support was ordered in 2009, he reunited with the mother three or four times, lived with her and the child, and supported them financially.   But Petitioner's child support obligation did not automatically cease during those times; he never filed a petition to modify it, nor did he seek credit toward it.

---

[31] *Roop v. Buchanan*, 999 N.E.2d 457, 462 (Ind. Ct. App. 2013).

[32] *Miller v. Miller*, 565 P.2d 382, 385 (Or. App. 1977).

In syllabus point 3 of *Dalton v. Dalton*,[33] we held that "[W]here the parties . . . simply cohabit, the preexisting [child support] order does not automatically terminate, but remains in full effect, and the child support obligation continues as defined in the order."

For these reasons, the circuit court correctly held that it lacked the authority to discharge Petitioner's child support arrearage to the mother. West Virginia Code § 48-1-204 plainly states that "a child support order may not be retroactively modified so as to cancel or alter accrued installments of support." This Court has held that "[w]hen a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute."[34]

Having addressed all issues properly before this Court, we note that Petitioner has other avenues of relief available. He may petition the circuit court to

---

[33] 207 W. Va. 551, 534 S.E.2d 747 (2000) (quoting Syl. Pt. 1, in part, *Griffis v. Griffis*, 202 W. Va. 203, 503 S.E.2d 516 (1998)).

[34] Syl. Pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959). Petitioner's public policy arguments are matters for the Legislature, not this Court. *See* Syl. Pt. 1, in part, *State ex rel. Appalachian Power Co. v. Gainer*, 149 W. Va. 740, 143 S.E.2d 351 (1965) ("Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary.").

16

structure a payment plan of his arrearage.[35] Petitioner, and the guardian, may also remind the circuit court that it had a mandatory duty to issue a support order payable by the child's mother after the child was removed from her home.[36]

## IV. CONCLUSION

For the reasons set out above, we affirm the February 19, 2021, order of the Circuit Court of Monongalia County that denied Petitioner's motion to discharge his child support obligation.

---

[35] *See* W. Va. Code § 48-13-803 (2001) ("When the payor is not paying any current support obligation but is required to pay for arrearages or reimbursement support, the court shall set a payment amount for the repayment of reimbursement support or of a support arrearage that is reasonable pursuant to the provisions of this article or section 6-301, but not to exceed the limits set out in section 14-408.").

[36] *See* W. Va. Code § 49-4-801(c) (2015) ("When a child is removed from his or her home pursuant to this chapter, the court shall issue a support order payable by the child's mother."); *see also* Syl. Pt. 4, *West Virginia Dep't of Health & Hum. Res., Bureau for Child Support Enf't v. Smith*, 218 W. Va. 480, 624 S.E.2d 917 (2005) ("When a circuit judge enters an order on an abuse or neglect petition filed pursuant to Chapter 49 of the *West Virginia Code*, and in so doing alters the custodial and decision-making responsibility for the child and/or commits the child to the custody of the Department of Health and Human Resources, *W. Va. Code*, [49-4-801 (2015)] requires the circuit judge to impose a support obligation upon one or both parents for the support, maintenance and education of the child. The entry of an order establishing a support obligation is mandatory; it is not optional.").

At oral argument in this matter, the parties indicated that Petitioner initially declined to pursue child support from the mother. But Petitioner cannot waive his child's right to receive support; it is not his to waive. *See* Syl. Pt. 3, *Wyatt*, 185 W.Va. at 472, 408 S.E.2d at 51 ("The duty of a parent to support a child is a basic duty owed by the parent to the child, and a parent cannot waive or contract away the child's right to support.").

Affirmed.